HANS J. LILJEBERG, Judge.
| {.Defendant, U.S. Agencies Casualty Insurance Company (“US Agencies”), appeals a judgment rendered in favor of plaintiff, Ramiro Farciert, finding coverage under the insurance policy issued by defendant and awarding him $18,500.00. For the following reasons, we reverse and vacate the judgment.

FACTS AND PROCEDURAL HISTORY

This case arises from a motor vehicle accident that occurred on May 30, 2010, involving a 2007 Ford F-150 Supercrew owned by Ramiro Farciert and insured by U.S. Agencies. Mr. Farciert’s son, Erik,[1] was operating the vehicle when he ran into a pole, a parked vehicle, and a house. At the time of the accident, Erik had a blood alcohol content of 0.202 g%, and he ultimately pled guilty to the charge of driving while intoxicated. According to Mr. Farc-iert, Erik took the vehicle without his permission. As a result of the accident, the Ford Supercrew was damaged. The parties stipulated that the value of the damage sustained was $18,500.00.
After the accident, Mr. Farciert sought to recover these damages pursuant to the insurance policy issued by U.S. Agencies that listed the Ford Supercrew as a described vehicle. However, U.S. Agencies refused to pay for the damages, claiming that there was no insurance coverage pursuant to two exclusions set forth in the policy. The first exclusion generally provides that there is no coverage for | odamage to the insured’s vehicle arising from the operation of the vehicle by a person over 15 years of age who has resided in the insured’s household for more than 30 days prior to the accident, if that person is not listed on the application and a premium has not been paid for this person. The second exclusion provides that there is no coverage for loss occurring while the operator of the vehicle had a blood alcohol content above the legal limit.
On May 27, 2011, Mr. Farciert filed suit against U.S. Agencies, seeking to recover the damages sustained as a result of the accident. The matter came before the court for a bench trial on the merits on April 9, 2013.
At trial, Ramiro Farciert testified, through a Spanish interpreter, that on February 12, 2010, he applied for and purchased insurance coverage from U.S. Agencies for his Ford F-150 Supercrew and another vehicle at Gama Insurance Agency (“Gama”). He stated that he chose to go to Gama, because all of the personnel there spoke Spanish. Mr. Farc-iert stated that he signed the policy that he purchased, but he did not read it, because he does not speak or read English. He testified that the insurance agent, who spoke Spanish, read the policy and gave him a general explanation, but she did not translate the policy line by line. One of Mr. Farciert’s sons, Martin, accompanied Mr. Farciert to the insurance agency to translate for him if the insurance agent did not speak Spanish. However, because the agent spoke Spanish, Martin did not provide translation for his father.
According to Mr. Farciert, he was presented with three options for insurance and he chose insurance coverage through U.S. Agencies, because it was the most economical. He testified that it took 50 to 60 minutes for the insurance policy to be explained to him and for him to sign it. Although the policy required the disclosure of the names of any individuals living with him that were 15 years or older, Mr. Farciert testified that the insurance agent *1023 never asked him to provide this ^information. He further stated that he had three children over 15 living with him at the time and he would have provided this information, but he was never asked if anyone older than 15 lived with him, other than his wife. He further indicated that he knew he could ask the agent questions, but he did not have any questions because he believed that she was providing him with all of the necessary information.
Mr. Farciert’s son, Martin Farciert, also testified at trial. He stated that he can read, speak, and understand English. He testified that he went with his father to acquire an insurance policy at Gama Insurance Agency, but the agent spoke Spanish so he did not have to translate. He stated that the agent asked his father questions, such as if he was married, did he own a house, and did he have any accidents or tickets on his record. However, he stated that the agent did not ask if Martin or any other children lived with Mr. Farciert. He further testified that the agent did not go over the policy with them; rather, she just explained the monthly premium, what would be covered, and told him where to sign.
At the conclusion of trial, the trial court took the matter under advisement. Thereafter, on May 13, 2013, the trial judge rendered a judgment in favor of Mr. Farc-iert and against U.S. Agencies, finding coverage under the policy and awarding Mr. Farciert $18,500.00 plus interest and costs. The trial judge also issued reasons for judgment, finding that plaintiffs witnesses were credible, that U.S. Agencies did not properly explain the policy to plaintiff, and that Erik took the vehicle without permission which rendered the intoxication exclusion inapplicable. US Agencies appeals.

LAW AND DISCUSSION

In its first assignment of error, U.S. Agencies argues that the trial court erred when it found that the insurance policy was not properly explained to Mr. Farciert Hand when it found that there was coverage under the policy for the damages in this case.
The insurance policy issued by U.S. Agencies to Mr. Farciert provides coverage for his Ford F-150 Supercrew and another vehicle. Under the section entitled, “COVERAGES FOR DAMAGE TO YOUR AUTO,” the policy provides the following exclusion, in pertinent part, as follows:
Part-E — Collision Coverage Exclusions for Parts D, E, F, AND G
There is no Coverage for Damage To Your Auto for:
2. Arising out of the operation or use of any auto insured under Parts D, E, F, and/or G by a person who has resided in your household for more than thirty (30) days prior to the date of the accident who was not listed on your application for insurance and/or for whom a premium has not been paid; for the purposes of this exclusion, “a person who has resided in your household” is someone who at the time of the accident has been staying there a minimum of thirty (30) days for an indefinite and extended period of time or who has otherwise evidenced the intent to be a resident of your household. (Emphasis in original).
In addition, page one of the application for insurance provides in pertinent part:
APPLICANT WARRANTS THERE ARE NO PERSONS IN THE HOUSEHOLD AGE 15 AND OLDER OTHER THAN THOSE NAMED BELOW, INCLUDING EXCLUDED PERSON (IF ANY).
On that page, no persons were listed as living in Mr. Farciert’s household, other than Mr. Farciert and his wife, Teresa *1024 Farciert. Page two of the application, which was signed by Mr. Farciert, lists Ramiro Farciert as a “Covered Person” and Teresa Farciert as an “Excluded Person.” It further provides, in pertinent part:
Applicant’s Disclosure and Classification of ALL Persons Age 15 and Older Living in the Applicant’s Household
I, the Applicant, acknowledge that I have been asked to provide | fithe names of all persons that live in my household, age 15 and older, licensed or not, and that are related to me or not. I affirmatively state that I have fully and accurately disclosed this information to the insurance company and that I have not withheld any of the requested information. I understand that this information may affect whether the policy is issued, the policy premium or whether the policy would be subject to any different terms, conditions or exclusions. I understand that failure to truthfully list all persons age 15 and older who currently reside in my household may result in the policy being voided or a denial of coverage under exclusions of the policy.
Additionally, on page three of the application is a checklist, and there is a check-mark by “True” next to the statement:
I have disclosed EVERY PERSON LIVING IN MY HOUSEHOLD age 15 and older, whether or not they possess a driver’s license, and whether or not related to me. (Emphasis in original).
Below the checklist is the APPLICANT’S STATEMENT, which provides that the applicant has read the application and provided the information requested by the agent to the insurance company, and that all of the information provided is complete and true. Mr. Farciert signed under the APPLICANT’S STATEMENT, but he testified that he did not put the check-marks on the checklist and did not know what each of the lines stated.
Mr. Farciert admits that his son, Erik, was over 15 at the time of the accident and had resided with him for years before the accident. However, Mr. Farciert did not list Erik, or any of his other children, as a person residing in his household for more than 30 days.[2] Accordingly, Mr. Farciert was not charged and paid no premium for Erik’s use or operation of Mr. Farciert’s vehicles.
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Carbon v. Allstate Insurance Co., 97-3085 (La.10/20/98), 719 So.2d 437, 439. The court’s role in interpreting insurance contracts is to | ascertain the common intent of the parties to the contract. LSA-C.C. art. 2045; Cadwallader v. Allstate Insurance Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580. The parties’ intent, as reflected by the words in the policy, determines the extent of coverage. Louisiana Ins. Guar. Ass’n v. Interstate Fire and Cas. Co., 93-911 (La.1/14/94), 630 So.2d 759, 763. Such intent is to be determined in accordance with the plain, ordinary, and general meaning of the words used in the policy, unless the words have acquired a technical meaning. Id.; LSA-C.C. art. 2047.
If the words of a policy are clear and unambiguously express the parties’ intent, the insurance contract must be enforced as written. Cadwallader, 02-1637 at 4, 848 So.2d at 580. Courts do not have the authority to alter the terms of insurance contracts when the policy’s provisions *1025 are couched in unambiguous terms. Id. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume. Louisiana Ins. Guar. Ass’n, 630 So.2d at 763.
In the present case, the insurance policy clearly and unambiguously requires the disclosure of any person over age 15 that has lived with the insured for at least 30 days. The policy expressly excludes coverage for damage to an insured vehicle arising from the use of that vehicle by a person residing in the insured’s household over 30 days who was not listed on the application for insurance and for whom a premium has not been paid.
Mr. Farciert acknowledges that he did not disclose that anyone other than his wife lived with him, though three of his sons, all of whom were over 15, had been living with him for more than 30 days. Mr. Farciert also admits that no premium was paid to U.S. Agencies for any of his children to operate his vehicles. Further, |sMr. Farciert acknowledges that he signed the application for insurance and the “APPLICANT’S STATEMENT,” both of which indicate that he had disclosed the names of every person living in his household that was age 15 or older. However, Mr. Farciert contends that this coverage exclusion should not apply in this case, because he does not read or speak English and the insurance agent did not ask him for this information.
US Agencies argues that the parties are bound by the terms of the insurance policy. It notes that the insurance agent spoke Spanish and that Mr. Farciert’s son, Martin, who speaks and reads English, went with his father to the insurance agency to assist with translation, if needed. Mr. Farciert acknowledges that he could have asked the insurance agent or his son if he had any questions about the policy. US Agencies further claims that it is incredible to believe that the insurance agent discussed and obtained information for all other portions of the policy, but neglected to ask the one question pertinent to this case-whether anyone over 15 years old lived with the insured.
Recently, in Garza v. Argueta, 12-561 (La.App. 5 Cir. 3/27/13), 113 So.3d 384, this Court addressed a similar situation. In Garza, plaintiff sued his insurer seeking uninsured/underinsured motorist (“UM”) coverage for damages sustained in an accident, though he had executed a waiver of UM coverage when he purchased his insurance policy. Garza, 12-561 at 2, 113 So.3d at 385. Mr. Garza argued that the waiver of UM coverage was invalid because he did not knowingly reject coverage since he was “limited in English” and did not understand what he was signing. Id. at 3^4, 113 So.3d at 386. The trial court granted summary judgment in favor of the insurer, finding no coverage pursuant to the UM waiver. This Court affirmed, noting that Mr. Garza signed the waiver of UM coverage. Garza, 12-561 at 5, 113 So.3d at 386. Although Mr. Garza argued that Spanish |flwas his first language and that he did not understand the waiver, this Court noted that an insured is presumed to know and understand what he is signing. Id. Mr. Garza did not allege fraud, duress, or misconduct of the insurance agent, and this Court found that he did not rebut the presumption that he validly waived UM coverage. Id.
Also, in Pena v. Simeon, 11-1083 (La.App. 5 Cir. 5/22/12), 96 So.3d 547, plaintiff argued that she had not executed a valid waiver of UM coverage, because her first language was Spanish and she did not understand the waiver form that was written in English. This Court rejected plain *1026 tiffs argument, finding that she did not rebut the presumption that she knowingly rejected UM coverage. Pena, 11-1083 at 9, 96 So.3d at 551. This Court noted that plaintiff did not allege fraud, duress, or misconduct of the insurance agent, and plaintiff did not tell the insurance agent that she needed the forms explained to her in Spanish. Id. at 9-10, 96 So.3d at 552.
In Rizzo v. Ward, 09-1325 (La.App. 4 Cir. 2/24/10), 32 So.3d 986, the Fourth Circuit addressed a similar case. Plaintiff alleged that his waiver of UM coverage was invalid because the waiver was written in English and he could not speak, read, or write English fluently. The Fourth Circuit rejected plaintiffs argument and found the UM waiver to be valid, noting that plaintiff was able to converse with the insurance agent in Spanish and that he did not allege duress or misconduct of the insurance agent. Rizzo, 09-1325 at 4, 32 So.3d at 988-989.
In the present case, Mr. Farciert signed the application for insurance, which provided that he had disclosed all persons over age 15 living with him for at least 30 days. Absent allegations of fraud, duress, or misconduct of the insurance agent, he is presumed to have known and understood what he signed. Rizzo, 09-1325 at 4, 32 So.3d at 989. Further, the insurance agent spoke Spanish and his son, | inMartin, went with him to the insurance agency because he speaks and reads English. Nothing prevented Mr. Farciert from asking questions if he did not understand what he was signing. We find Mr. Farc-iert’s argument that he did not understand the terms of the policy to be unpersuasive.
The damage to Mr. Fareiert’s vehicle occurred while his son, Erik, was operating the vehicle. However, Mr. Farciert had not disclosed that Erik had been living with him for over 30 days. Under the clear wording of the policy, there was no coverage for damage to the Ford Super-crew while being used by a person over 15 who lived with the insured for over 30 days but was not disclosed.
Considering the record before us, along with the applicable law, we find that the trial court erred in finding coverage for the damage to the Ford Supercrew under the facts of this case. Accordingly, we reverse and vacate the judgment awarding $18,500.00, plus interest and costs, to Mr. Farciert.
In its second assignment of error, U.S. Agencies argues that the trial court abused its discretion when it found that the intoxication exclusion in the insurance policy was unenforceable. However, due to our finding in the first assignment of error that there is no coverage under the policy in this case, it is unnecessary to address this argument by U.S. Agencies.

DECREE

For the foregoing reasons, we reverse and vacate the trial court judgment awarding $18,500.00 plus interest and costs to Mr. Farciert.

REVERSED AND VACATED.

. The name of Mr. Farciert's son is spelled '‘Erik,” "Eric," and "Erick” in different documents in the record. For purposes of this appeal, we will refer to him as "Erik.”

. Ramiro Farciert testified that at the time he purchased insurance coverage, he had three sons over age 15 living with him: Martin-age 23; Mario-age 22; and Eric-age 18.