MOLAISON, J.
Plaintiff-Appellant, Mark C. Ledet, appeals the trial court's November 28, 2017 partial final judgment granting summary judgment in favor of defendants, Certain Underwriters at Lloyd's, London Subscribing to Policy No. 17-7590089233-S-00, and National Fire and Marine Insurance Company (collectively "Insurers"), dismissing Mr. Ledet's claims against the Insurers for breach of an insurance contract and bad faith claims adjusting, with prejudice. For the reasons that follow, we affirm the trial court's judgment.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
This action arises out of flooding that occurred at The Carol Condominium (the "Carol")[1] in March 2016 as a result of a ruptured water pipe caused by renovation *1061 work being performed in the one of the units.[2] "[V]irtually all of the units and common elements on the floors of the [Carol] below the tenth floor" sustained water damage due to the broken pipe, including the unit owned by Mr. Ledet.[3]
Defendant, Carol Condominium Association, Inc. (the "Association"), is a Louisiana non-profit corporation created pursuant to the Louisiana Condominium Act, La. R.S. 9:1121.101 et seq. (the "Act").[4] All Carol unit owners are automatically members of the Association, and no other persons or entities are entitled to membership. Each unit owner's membership interest in the Association is equal to his respective percentage of ownership interest in the common elements of the Carol as set forth in the Declaration of Condominium of Carol Condominium (the "Declaration").
According to the Association's By-Laws, the Association is required to "obtain adequate and appropriate kinds of insurance" in accordance with the Declaration.[5] The *1062 Act also mandates that the Association obtain insurance insuring the condominium property.[6] The Declaration specifically provides that "the [Carol] Property is submitted to the provisions of the [Act]." Accordingly, the Association purchased a commercial property insurance policy (the "Policy") from the Insurers providing coverage for "direct physical loss of or damage to Covered Property" at the Carol caused or resulting from any covered cause of loss.[7] The only named insured *1063 identified in the Policy is the "Carol Condominium Association, Inc.," with a single stated limit of liability for the building, and a separately stated limit for business personal property. There is no separately stated limit of liability for each individual unit.[8] The premiums for the Policy are paid for through the common expenses, which are paid for by each unit owner according to his percentage interest in the common elements. The Policy was in effect from February 1, 2016 to February 1, 2017, including the date the water pipe in the Carol ruptured causing damage to Mr. Ledet's unit.
Mr. Ledet avers that he presented to the Insurers satisfactory proof of loss of the damage sustained to his unit.[9] While it appears the Association also presented a claim to the Insurers for damages occasioned to the Carol-and that the Insurers adjusted the loss and issued payment to the Association-the Insurers denied payment to Mr. Ledet on his individual claim on the basis that he is not a named insured, an additional insured, or a third party beneficiary under the Policy.
On March 6, 2017, Mr. Ledet filed suit against FabianMartins and its liability insurer, the owners of Unit 10-C and their liability insurer, Mr. Ledet's own personal property insurer,[10] the Association, and the Insurers, seeking damages caused to his unit as a result of the flooding. As against the Insurers, Mr. Ledet claims he is entitled to "relief and damages for bad faith breach of contract pursuant to Louisiana contract law, La. C.C. art. 1953 et seq. , including but not limited to the amounts owed under the ... Policy" for the property damage sustained to his individual unit, and for "pre- and post-judgment legal interest, mitigation costs, inconvenience and aggravation, litigation costs and expenses, statutory penalties, and attorney fees pursuant to the Louisiana Insurance Code Unfair Trade Practices statutes," La. R.S. 22:1982 and La. R.S. 22:1973.
In answer to Mr. Ledet's petition, the Insurers averred that they "were notified of the loss by [the Association] and adjusted same in accordance with the terms of the Policy and Louisiana law." The Insurers then filed an exception of no cause of action and/or motion for summary judgment on the basis that Mr. Ledet, who is not a named insured or an additional named insured, has no right under the Policy to sue the Insurers for losses sustained to his individual unit. According to the Insurers, absent proof that Mr. Ledet is a third party beneficiary of the Policy, the "right to sue [the Insurers] belongs to their insured," the Association.
In opposition, Mr. Ledet argued that the Act, the Policy, and the Declaration, when read collectively, establish that, under the theory of stipulation pour autrui , he is a *1064 third party beneficiary of the Policy. As such, he averred that his petition states a cause of action against the Insurers for breach of the Policy and bad faith claims adjusting. Alternatively, Mr. Ledet argued that, as a "beneficiary of an express contractual insurance trust administered by the Association as trustee," he is entitled to enforce the Association's rights under the Policy in order to protect his interest in the insurance proceeds owed by the Insurers for damage to his unit.
The Insurers' exception and motion came for hearing on October 19, 2017. Following oral argument, the trial court took the matter under advisement. On November 28, 2017, the trial court issued judgment in favor of the Insurers, granting their motion for summary judgment and dismissing with prejudice Mr. Ledet's claims against them, incorporating the following written reasons:
After careful consideration of the applicable law, memoranda, and exhibits submitted by the parties, the Court finds that, under the policy at issue herein, there is no clear expression of intent to benefit the Plaintiff, and any benefit which may accrue to the Plaintiff is merely incidental to the contract. Thus, the Plaintiff is not a third party beneficiary and has no standing to assert a claim under the policy.
From this judgment, Mr. Ledet filed the instant appeal.
ASSIGNMENT OF ERROR
In his sole assignment of error, Mr. Ledet contends the trial court erred in failing to find that, although he is not a named insured or an additional named insured, the Association's Policy contains "manifestly clear, certain, and direct stipulations of insurance coverage and other benefits in his favor as the owner of a condominium unit insured by the [P]olicy," and thus, under a theory of stipulation pour autrui , he is a third party beneficiary of the Policy to the extent of his [undivided .6643] interest in the insurance proceeds owed by the Insurers for damage to his unit. Alternatively, Mr. Ledet avers the trial court erred in failing to find that he is a beneficiary of an "express contractual insurance trust" administered by the Association as trustee for the benefit of the unit owners, including himself, and as such, he is entitled to enforce the Association's rights under the Policy in order to protect his interest in the insurance proceeds that are owed by the Insurers for damage to his condominium unit.
LAW AND ANALYSIS
It is well settled that the appellate review of summary judgment is de novo , using the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Hebert v. Jefferson Parish Hosp. Dist. #1 , 11-943 (La. App. 5 Cir. 3/27/12), 91 So.3d 1126, 1127. The party bringing the summary judgment motion bears the burden of proof. La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment," then the mover must merely "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." Id. Then, the burden shifts to the adverse party "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." Id. Both the evidence and all inferences drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in his favor. Hebert , 91 So.3d at 1127.
A "material fact" is one that potentially insures or prevents recovery, affects a litigant's ultimate success, or determines the *1065 outcome of the lawsuit. An issue is genuine if it is such that reasonable persons could disagree; if only one conclusion could be reached by reasonable persons, summary judgment is appropriate as there is no need to go to trial on that issue. Upton v. Rouse's Enterprise, LLC, et al. , 15-484 (La. App. 5 Cir. 2/24/16), 186 So.3d 1195, 1198, writ denied , 16-0580 (La. 5/13/16), 191 So.3d 1057. Whether a particular fact is material can be seen only in light of the substantive law applicable to the case. Triche v. McDonald's Corp. , 14-318 (La. App. 5 Cir. 10/29/14), 164 So.3d 253, 256.
Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. Simon v. State Farm Mut. Auto. Ins. Co. , 16-46 (La. App. 5 Cir. 9/8/16), 201 So.3d 1007, 1009. An insurance policy is a contract between the insurer and the insured and has the effect of law between them. See La. C.C. arts. 1906 and 1983 ; Gorman v. City of Opelousas , 13-1734 (La. 7/1/14), 148 So.3d 888, 892. The judiciary's role in interpreting an insurance contract is "to ascertain the common intent of the insured and the insurer as reflected by the words in the policy." Peterson v. Schimek , 98-1712 (La. 3/2/99), 729 So.2d 1024, 1028 ; see La. C.C. art. 2045. The parties' intent, as reflected by the words in the policy, determines the extent of coverage. Farciert v. U.S. Agencies Cas. Ins. Co. , 13-626 (La. App. 5 Cir. 12/19/13), 131 So.3d 1020, 1024. Such intent is to be determined in accordance with the plain, ordinary and generally prevailing meaning of the words used in the policy, unless the words have acquired a technical meaning. Id. ; La. C.C. art. 2047.
An insurance contract is construed as a whole and each provision of the policy must be interpreted in light of the other provisions so that each is given meaning. Gange v. Hamed , 12-510, 12-511 (La. App. 5 Cir. 5/30/13), 118 So.3d 36, 41, writ denied , 13-2050 (La. 11/15/13), 126 So.3d 472 (citing Peterson v. Schimek , 729 So.2d at 1029 ); see also La. C.C. art. 2050. A single provision or portion of the policy should not be construed separately at the expense of disregarding other provisions. Id. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent. See La. C.C. art. 2046 ; Peterson v. Schimek , 729 So.2d at 1027. Insurance policies should not be interpreted in an unreasonable or a strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or to achieve an absurd conclusion. Carrier v. Reliance Ins. Co. , 99-2573 (La. 4/11/00), 759 So.2d 37, 43. That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. Peterson v. Schimek , 729 So.2d at 1029. If, however, an ambiguity remains after applying the general rules of contractual interpretation to an insurance contract, the ambiguous contractual provision must be construed against the insurer who furnished the wording of the contract and in favor of the insured. Id. ; La. C.C. art. 2056. Unless a policy conflicts with statutory provisions or public policy, insurers may limit their liability and are entitled to impose and enforce reasonable conditions upon the policy obligations that the insurer contractually assumes. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co. , 93-911 (La. 1/14/94), 630 So.2d 759, 763.
*1066 In the instant case, the parties do not dispute that the Association is the only named insured under the Policy, and that there is no express contractual language therein (or obligation mandated by the provisions of the Act, or those stated in the Declaration), which creates a direct obligation from the Insurers to Mr. Ledet. Mr. Ledet's claims against the Insurers for breach of the insurance contract and bad faith claims adjusting rests solely on his asserted status as a third party beneficiary of the Policy or, alternatively, as a beneficiary of an express contractual insurance trust. Thus, this Court must determine whether the applicable provisions of the Act, Declaration, and Policy, when read together, create a stipulation pour autrui in favor of Mr. Ledet, a third party unit owner, including giving him a direct right of action against the Insurers under the Policy for the relief he seeks.[11]
Stipulation Pour Autrui
In Louisiana, a plaintiff may sue under an insurance policy when he is a named insured, additional insured, or a third party beneficiary of the contract. Haddad v. Elkhateeb , 10-0214, 10-0308 (La. App. 4 Cir. 8/11/10), 46 So.3d 244, 257 n. 11, writ denied , 10-2076 (La. 11/12/10), 49 So.3d 895. Because Mr. Ledet is neither a named insured nor an additional named insured, he can only avail himself to the benefits of the Policy if he can establish that he is a third party beneficiary.[12] Joseph v. Hospital Service District No. 2 of the Parish of St. Mary , 05-2364 (La. 10/15/06), 939 So.2d 1206, 1211. The Louisiana Civil Code provides that "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." La. C.C. art. 1978. In Louisiana, such a contract for the benefit of a third party is commonly referred to as a "stipulation pour autrui. "
The Civil Code does not provide an "analytic framework for determining whether a third party beneficiary contract exists" in a particular case. Joseph , 939 So.2d at 1211. The Louisiana Supreme Court, however, has held that there are three criteria for determining whether contracting parties have provided a benefit for a third party and requires a review of whether: (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee. Id. , 939 So.2d at 1212. Pursuant to La. C.C. art. 1981, "[t]he stipulation gives the third party beneficiary the right to demand performance from the promisor." Joseph , 939 So.2d at 1211. Each case must be decided on a case-by-case basis, and "[e]ach contract must be evaluated on its own terms and conditions in order to determine if the contract stipulates a benefit for a third person." Joseph , 939 So.2d at 1212 ; see also Scarberry v. Entergy Corp. , 14-1256 (La. App. 4 Cir. 5/6/15), 172 So.3d 51, 57. A stipulation pour autrui is never presumed, *1067 and the party claiming the benefit bears the burden of proof. Joseph , 939 So.2d at 1212. Thus, Mr. Ledet bears the burden of establishing all three criteria. Id. ; see also La. C.C. art. 1831.[13]
1. Manifestly Clear Stipulation
"The most basic requirement of a stipulation pour autrui is that the contract manifests a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof." Joseph , 939 So.2d at 1212 [citations omitted]. Based upon our de novo review, we find that the Policy, when considered together with the mandates of the Act and the Declaration, lacks a manifestly clear stipulation of coverage intended by the parties to benefit individual unit owners, including Mr. Ledet, so as to give them a direct right of enforcement against the Insurers. As the Supreme Court noted in Joseph , "[a] person may derive a benefit from a contract to which he is not a party without being a third party beneficiary." Joseph , 939 So.2d at 1214. Such is the situation in the instant case.
The Act mandates that any loss covered by the Policy "shall be adjusted with the [A]ssociation," and that any proceeds for that loss "shall be payable to any insurance trustee designated for that purpose, or otherwise to the [A]ssociation ...." [Emphasis supplied.] La. R.S. 9:1123.112(D). Also, section 13(a) of the Declaration requires that the Policy "shall be written in the name of, and the proceeds thereof shall be payable to ... the Association, as the [designated] trustee for each of the Unit Owners ...." [Emphasis supplied.] Thus, pursuant to the express provisions of the Act and the Declaration, it is clear that all property losses sustained by the Carol must be adjusted with the Association-not with individual unit owners-and that all proceeds recoverable under the Policy for those losses must be paid to the Association, as the designated trustee-not to the individual unit owners.
Further, while recognizing that the Policy covers property owned by the Association as well as property that may be owned by a unit owner, we disagree with Mr. Ledet's contention that the Policy's loss payment provisions stipulate a benefit in his favor because those provisions provide the Insurers with the option to adjust losses directly with unit owners. To the contrary, we find these provisions give to the Insurers the exclusive right to either adjust and settle covered losses directly with the Association (which is in accord with the Act and the Declaration) or with the unit owners. Our review of the entire Policy has revealed no provision which entitles the unit owners to receive direct payment for losses that may include their individual units. Moreover, it is clear from the Policy's unambiguous language that the Insurers are not obligated to pay directly to Mr. Ledet any part of the indemnity that may be due for the loss he claims to have sustained. Thus, even though the Policy benefits Mr. Ledet and other third party unit owners by providing coverage for certain types of property that may belong to them, we find that its express language, which confers solely upon the Insurers the power to regard all contractual obligations due under the Policy as extending only to the named insured (i.e. the Association), specifically negates the existence of a stipulation pour autrui , or any enforceable obligation, in favor of the individual unit owners as third party beneficiaries.
*1068 Other provisions of the Policy, as well as those contained in the Act and the Declaration, further support a finding that the Insurers and the Association did not intend to confer on any third party unit owner a legally enforceable right of recovery against the Insurers. The Policy expressly states that the Association is the "Named Insured" and provides, throughout the Policy, that "the words 'you' and 'your' refer to the Named Insured." Paragraph 4 of the General Provisions provides that "[t]he insurance described herein shall not be assigned in whole or in part without the written consent" of the Insurers. Further, paragraph F of the Common Policy Provisions provides "[y]our rights and duties under this policy may not be transferred without our written consent." Additionally, paragraph F of the Commercial Property Conditions specifically states that "[n]o party other than you [the Association, the named insured], having custody of Covered Property will benefit from this insurance." [Emphasis supplied.]
In addition to the Policy's provisions, the Act provides that "[a]n insurance policy issued to the [A]ssociation does not prevent a unit owner from obtaining insurance for his own benefit. " [Emphasis supplied.] La. R.S. 9:1123.112(E). Further, section 13(d) of the Declaration states that "[e]ach Unit Owner is responsible for obtaining his own insurance" covering damage to the contents, additions and improvements to his unit, and may obtain additional insurance covering his personal liability and loss or damage to his unit "above and beyond the extent that his liability loss or damage" is covered by the Policy obtained by the Association. Lastly, while the Act requires that unit owners be insured persons under the Association's liability coverage, it does not require that unit owners be named insureds under the Association's property insurance coverage. See La. R.S. 9:1123.112(C)(1).
Mr. Ledet has not directed this Court to any ambiguity in the Policy, and we have found none. Therefore, considering the Policy provisions as a whole, together with the applicable provisions of the Act and the Declaration, we find the Policy lacks a manifestly clear stipulation of coverage in favor of individual unit owners, including Mr. Ledet, or that the Insurers and the Association intended to give them an enforceable benefit under the insurance contract.[14] Accordingly, the trial judge correctly determined that the Policy lacks a manifestly clear stipulation intending to establish a benefit in favor of Mr. Ledet or other unit owners.
2. Certainty as to the Benefit Provided
The second factor in determining whether a stipulation pour autrui exists (i.e. , that there is certainty as to the benefit provided to the third party), is based on the principle that, in order "[t]o create a legal obligation enforceable by the beneficiary, there must be certainty as to the benefit to accrue to the beneficiary." Joseph , 939 So.2d at 1212 (citing Berry v. Berry , 371 So.2d 1346, 1347 (La. App. 1 Cir.), writ denied , 373 So.2d 511 (1979) ).[15]
*1069 As to this factor, we find no language in the Policy that obligates the Insurers to provide any benefit directly to individual unit owners such as Mr. Ledet. Pursuant to La. R.S. 9:1123.112(D) of the Act, the unit owners may only recover proceeds under the Policy from the Association-not the Insurers -and even then, only if surplus proceeds remain after repairs are made by the Association to the common elements and covered portions of the units. Thus, whether the unit owners are able to recover any proceeds at all is contingent upon the extent of damage occasioned to the common elements and covered portion of the units, and is triggered only when the loss payment made by the Insurers to the Association exceeds the Association's cost to repair that damage.
We find this benefit of the insurance proceeds to the unit owners, if any, is an indirect benefit, purely speculative, and is an obligation imposed by the Act upon the Association, not an obligation imposed upon the Insurers under the provisions of the Policy. Moreover, absent an express provision in the Policy, we find that a third party unit owner's potential entitlement to a portion of the insurance proceeds paid by the Insurers to the Association is insufficient to confer a benefit in favor of the unit owner to demand those proceeds directly from the Insurer. Because no express provision in the Policy exists in the case sub judice , we will not read one into it.
3. Benefit Not a Mere Incident of the Contract
The third requirement-that the benefit to the third party cannot be a mere incident of the contract-requires the reviewing court to distinguish those instances where an advantage has actually been stipulated on behalf of a third party from those where the advantage relied upon is "merely an incident of the contract between the parties." Joseph , 939 So.2d at 1212-1213 (quoting Smith, 11 Tul. L. Rev. at 28).[16] See also Estate v. Bernice Mayeaux v. Glover , 08-2031, 08-2032 (La. App. 1 Cir. 1/12/10), 31 So.3d 1090, 1096. "Not every promise, performance which may be advantageous to a third person, will create *1070 in him an actionable right." Joseph , 939 So.2d at 1212-1213 (quoting Smith, 11 Tul. L. Rev. at 28).
While acknowledging that Mr. Ledet does derive some benefit under the Policy, we find that any such benefit is merely incidental to the contract and is insufficient to establish a third party beneficiary relationship under the facts presented herein. To establish a stipulation pour autrui , the third party relationship must form the consideration for a condition of the contract. Rivnor Properties v. Herbert O'Donnell, Inc. , 92-1103 (La. App. 5th Cir. 1994), 633 So.2d 735, 742. Here, the plain language of the Policy, when viewed in its entirety, shows that the primary purpose of the Policy was not to directly benefit unit owners or to insure their individual units , but rather, was to discharge the Association's obligation under the Act and the Declaration to obtain insurance for the common elements and units against damage and loss, and to protect the Association's interests and property.
Also, the mere mention of "unit owners" in the Policy does not make the unit owners third party beneficiaries. They are not individually identified in the Policy, nor is there a separately stated limit of liability for each unit owner. Consequently, we find that the benefit alleged by Mr. Ledet-i.e. , coverage under the Policy for property he individually owns-was not consideration for a condition of the Policy, but rather, was merely incidental to the primary purpose for which the Insurers and the Association entered into the insurance contract. And, even though Mr. Ledet clearly benefits under the Policy, he is not an intended third party beneficiary with the right to make direct claims against the Insurers for individual losses; his potential benefits are merely incidental. Put another way, the Insurers did not intend to confer or obligate themselves to provide benefits to individual unit owners directly, nor was making unit owners third party beneficiaries consideration for the insurance contract.
Moreover, if we were to adopt Mr. Ledet's argument-that the Policy language intentionally stipulates a benefit in favor of the individual unit owners-we can envision a situation where insurers of condominium complexes in this state would not only be exposed to the insured's claim (i.e. , the Association's claim), but potentially, would also be exposed to multiple claims by the individual unit owners, non-signatories to the insurance contract, seeking recovery and payment for the same loss. Additionally, unless 100% of the unit owners agreed and signed off on a settlement, a lone unit owner could potentially hold up the entire settlement, thus preventing finality to any of the claims and/or repair and restoration of the damaged property. Instead, we find that under the Act, the intention is to have the Association, as trustee for the unit owners, as the only party entitled to receive payment under the Policy for losses or damage to covered property (whether owned by the unit owner or by the Association), so that the Association may then ascertain how and when to distribute those funds, if ever, to unit owners in the event a surplus of proceeds remains after all repairs to the damaged common elements and units have been made.
In sum, following our de novo review, we find Mr. Ledet has failed to satisfy the three-prong test for establishing a stipulation pour autrui as set forth by the Supreme Court in Joseph , supra. We conclude the Policy contains no provision which establishes a stipulation in favor of individual unit owners, such as Mr. Ledet, in a manifestly clear manner. We find there is no certainty in the Policy as to any *1071 benefit provided to the individual unit owners, and conclude that any such benefit derived is not intentional, but instead, a mere incident of the insurance contract between the Insurers and the Association. Put simply, we find the Policy devoid of any benefit flowing directly in favor of individual unit owners, which would create in them a direct right of action against the Insurers to either enforce the Policy or demand its performance. Accordingly, in the absence of a direct benefit conferred by the Policy, pursuant to La. C.C. art. 1978, as a matter of law, the unit owners [i.e. , Mr. Ledet] cannot be third party beneficiaries. Joseph , 939 So.2d at 1214. The trial court did not err in finding that Mr. Ledet is not a third party beneficiary under the Policy.
Express Contractual Insurance Trust
Regarding Mr. Ledet's argument that, pursuant to La. R.S. 9:2222(1) of the Louisiana Trust Code, he has a statutory right of action against the Insurers (to the extent of his interest in the insurance proceeds owed for damages to his unit) as a beneficiary of an "express contractual insurance trust" administered by the Association as Trustee, while we find the argument novel, we reject it. Although Mr. Ledet may have a right of action against the Association for alleged violations of its fiduciary obligations owed to the unit owners pursuant to the Act and/or Declaration regarding the Association's adjustment and handling of the claim, and as "trustee" of the insurance proceeds, this issue is not before us on appeal and we do not address it here. We find nothing in the record before us that establishes an "express contractual insurance trust" under the Louisiana Trust Code, La. R.S. 9:1721, et seq. , as suggested by Mr. Ledet.
Further, merely because the Association was obliged to hold any insurance proceeds it received under the Policy as "trustee" or "in trust" for the unit owners "as their interests may appear," we find that this did not create a "trust" or a "trust estate" as those terms are defined under the applicable provisions of the Louisiana Trust Code such that Mr. Ledet would have "a statutory right of action against the Insurers." Our research of this innovative argument has produced no case law or applicable statutory authority that would legally support Mr. Ledet's position. Consequently, we find this argument has no merit.
Claims for Bad Faith Claims Adjusting
While Mr. Ledet did not brief the issue involving his extra-contractual claims against the Insurers separately, he appears to suggest that, as a third party beneficiary to the Policy, he has a right to seek statutory penalties against the Insurers for their alleged bad faith in handling his claims. Courts have generally held that statutes subjecting insurers to penalties are penal in nature and are to be strictly construed. See Kelly v. State Farm Fire & Cas. Co. , 14-1921 (La. 5/5/15), 169 So.3d 328, 343. Because we have determined that Mr. Ledet, a non-party to the insurance contract, has no right to enforce the Policy as either a third party beneficiary thereto or as a beneficiary of an express contractual insurance trust, we find his claims against the Insurers for extra-contractual damages under La. R.S. 22:1892, La. R.S. 9:1973, and La. C.C. art. 1997, likewise fail.
CONCLUSION
Our de novo review in this matter confirms no genuine issue of material fact exists and that the Insurers are entitled to judgment as a matter of law. The Insurers have shown an absence of factual support for Mr. Ledet's claims against them, and Mr. Ledet has not produced sufficient evidence to show that he will be able to meet *1072 his evidentiary burden at trial. Moreover, when reviewing the evidence in a light most favorable to Mr. Ledet, we conclude that reasonable minds can reach only one conclusion: the Insurers and the Association did not intend to confer an enforceable right in favor of unit owners against the Insurers to recover for damage and loss to their individual units, and Mr. Ledet is not a beneficiary of an "express contractual insurance trust." Thus, the trial court was correct in granting summary judgment in favor of the Insurers and dismissing with prejudice Mr. Ledet's claims against them for breach of the Policy and bad faith claims handling. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
APPENDIX I
The pertinent provisions of the Policy issued by the Insurers to the Association insuring the Carol Property include:
SPECIAL CAUSE OF LOSS POLICY
DECLARATIONS PAGE
NAMED INSURED
CAROL CONDOMINIUM ASSOCIATION, INC
GENERAL PROVISIONS
4. Assignment. The insurance described herein shall not be assigned either in whole or in part without the written consent of ICAT.[1]
* * *
CONDOMINIUM ASSOCIATION COVERAGE FORM
Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations....
* * *
A. Coverage
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
1. Covered Property
Covered Property, as used in this Coverage Part, means the type of property described in this section, A.1, and limited in A.2. Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
a. Building , meaning the building or structure described in the Declarations, including:
(6) Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insured it:
(a) Fixtures, improvements and alterations that are a part of the building or structure; and
(b) Appliances, such as those used for refrigeration, ventilating, cooking, dishwashing, laundering, security or housekeeping....
But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph A.1.a.(6) above.
* * *
b. Your business Personal Property located in or on the building described in the Declarations ... consisting of the following:
(1) Personal property owned by you or owned indivisibly by all unit owners;
*1073 But Your Business Personal Property does not include personal property owned only by a unit-owner.
c. Personal Property of Others that is:
(1) In your care, custody or control; and
(2) Located in or on the building described in the Declaration ...
However, our payment for loss of or damage to personal property for the account of others will only be for the account of the owner of the property.
* * *
E. Loss Conditions
The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
4. Loss Payment
a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:
(1) Pay the value of lost or damaged property;
(2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;
(3) Take all or any part of the property at an agreed or appraised value; or
(4) Repair, rebuild, or replace the property with other property of like kind and quality, subject to b. below.
* * *
d. We will not pay you more than your financial interest in the Covered Property.
e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.
* * *
If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.
* * *
6. Unit-owner's Insurance
A unit-owner may have other insurance covering the same property as this Insurance. This Insurance is intended to be primary, and not to contribute with such other insurance.
* * *
9. Waiver of Rights of Recovery
We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations.
* * *
COMMERCIAL PROPERTY CONDITIONS
* * *
F. NO BENEFIT TO BAILEE
No person or organization, other than you, having custody of Covered Property will benefit from this Insurance.
* * *
COMMON POLICY CONDITIONS
B. Changes
This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in terms of this policy with our consent. This policy's terms can be amended or *1074 waived only by endorsement issued by us and made a part of this policy.
* * *
F. Transfer Of Your Rights And Duties Under This Policy
Your rights and duties under this policy may not be transferred without our written consent ...
* * *

The Carol is located at 2100 St. Charles Avenue in New Orleans, Louisiana.

The renovation work was being performed in Unit 10-C by its owners, Andrew W. Bursten and Vicki R. Rabin (in their capacities as co-trustees of the Andrew W. Bursten and Vicki R. Rabin Living Trust (the "Trust") ), and/or their contractor, FabianMartins Construction, LLC ("FabianMartins").

Mr. Ledet is the owner of Unit 9-B, together with an undivided .6643 percent interest in the common elements of the Carol. As a result of the flooding, Mr. Ledet contends his individual unit sustained "damage to the ceilings, walls, fixtures, doors, baseboards, floors, cabinets, countertops, appliances, HVAC system, electrical system, and fire protection system ... in addition to lost rental income, expert fees, attorney fees, travel expenses, inconvenience and aggravation."

The Association is the governing body for unit owners "for all the maintenance, repair, replacement, administration and operation of [the Carol]," as provided in the Act, the Declaration of Condominium of Carol Condominium, and the By-laws of the Association. The Declaration and the Association's Articles of Incorporation and By-laws are all recorded in the Conveyance Records of the Parish of Orleans. According to the terms of Mr. Ledet's Act of Cash Sale, the sale of Unit 9-B to Mr. Ledet was made and accepted "subject to the terms, conditions, and obligations as contained in the [Declaration] registered in COB 763C folio 979 and the attachments thereto ...." Copies of the January 23, 2014 Act of Cash Sale, the Declaration creating the Association, the Association's Articles of Incorporation, By-Laws, and Rules & Regulations, are a part of the record on appeal.

Specifically, sections 13(a) and 13(d) of the Declaration provide the following, in pertinent part, with respect to the Association's obligation to procure insurance:
13. Insurance
(a) The Board shall have the authority to and shall obtain insurance for the Property, exclusive of the additions within, improvements to and decorating of the Units or Limited Common Elements by the Unit Owners, against loss or damage ... and such hazards as are covered under standard extended coverage provisions for the full insurable replacement cost of the Common Elements and the Units .... Insurance replacement costs shall be deemed the cost of restoring the Common Elements, Units or any part thereof to substantially the same condition in which they existed prior to damage or destruction. Such insurance coverage shall be written in the name of, and the proceeds therefor shall be payable to, the Board of the Association , as the trustee for each of the Unit Owners in direct ratio to said Unit Owner's respective percentage of ownership in the Common Elements, as set forth in the Declaration. Each such policy of insurance shall also contain, if possible, a waiver of subrogation rights by the insurer against individual Unit Owners. The premiums for such insurance shall be a Common Expense.... [Emphasis supplied.]
* * *
(d) A Unit Owner shall be liable for any claim, damage, or judgment entered as a result of the use or operation of his Unit or caused by his own conduct. Each Unit Owner shall be responsible for obtaining his own insurance on the contents of his own Unit and the contents of the Limited Common Elements serving his Unit, as well as his additions and improvements thereto, decorating, furnishings and personal property, therein, and personal property stored elsewhere on the Property. In addition, in the event a Unit Owner desires to insure against his personal ... loss or damage ... above and beyond the extent that his liability loss or damage is covered by the ... insurance against loss or damage by fire and such other hazards obtained by the Board for all of the Unit Owners as part of the Common Expenses, as above provided, said Unit Owner may, at his option and expense, obtain additional insurance. [Emphasis supplied.]

Regarding the mandate to procure insurance, the Act, La. R.S. 9:1123.112, provides, in pertinent part:
A. Commencing not later than the time of the first conveyance of a unit to a person other than a declarant, the association shall maintain, to the extent reasonably available:
(1) Property insurance on the common elements and units, exclusive of improvements and betterments installed in units by owners, insuring against all risks of direct physical loss commonly insured against. The total amount of insurance after application of any deductibles shall be not less than eighty percent of the actual cash value of the insured property, exclusive of land, excavations, foundations, and other items normally excluded from property policies[.]
C. Insurance policies carried pursuant to Subsection A must provide that:
(1) Each unit owner is an insured person under the policy with respect to liability arising out of his ownership of an individual interest in the common elements or membership in the association.
* * *
(4) If, at the time of a loss under the policy, there is other insurance in the name of a unit owner covering the same property covered by the policy, the policy is primary insurance not contributing with the other insurance.
D. Any loss covered by the property policy under Subsection A(1) shall be adjusted with the association, but the insurance proceeds for that loss shall be payable to any insurance trustee designated for that purpose, or otherwise to the association, and not to any mortgagee. The insurance trustee or the association shall hold any insurance proceeds in trust for unit owners and lien holders as their interests may appear. Subject to the provisions of Subsection G, the proceeds shall be disbursed first for the repair or restoration of the damaged common elements and units, and unit owners and lien holders are not entitled to receive payment of any portion of the proceeds unless there is a surplus of proceeds after the common elements and units have been completely repaired or restored, or the condominium is terminated.
E. An insurance policy issued to the association does not prevent a unit owner from obtaining insurance for his own benefit.
F. An insurer that has issued an insurance policy to the association under this Section shall issue certificates ... of insurance, upon request, to any unit owner or mortgagee....
G. Any portion of the condominium damaged or destroyed shall be repaired or replaced promptly by the association .... [Emphasis supplied.]

The Policy does not contain coverage for liability. Rather, the coverage afforded by the Policy is strictly for damage to covered property and not the personal property of others due to the fault of an insured. The pertinent provisions of the Policy are set forth herein in Appendix I.

Contained in the record, attached to the Declaration as "Ledet 2," is a Certificate of Property Insurance identifying the sole named insured as "Carol Condominium Association, Inc., 2100 St. Charles Ave., New Orleans, LA 70130[,]" and contains the following at the bottom in the section entitled," Special Conditions/Other Coverages:"
Coverage above includes common area associated with Unit owner. Unit owner is responsible for building and personal property as described in Association declaration. 145 Units total[.]

Mr. Ledet claims that "[a]t no time prior to the water leak in Unit 10-C did [he] make any alterations, additions, improvements, or betterments to [his unit,] Unit 9-B."

Mr. Ledet personally insured his unit under a homeowners and unit owners insurance policy issued by co-defendant, Certain Underwriters at Lloyd's London, bearing Certificate Number CON570779, with a property coverage limit of $50,000.00, which policy was in effect at the time of Mr. Ledet's property damage loss.

In this appeal, this Court's sole concern is with the Insurers' liability to Mr. Ledet. We make no reference to Mr. Ledet's claim(s) against the Association (or any other party). The rights and duties, if any, owed by the Association to Mr. Ledet, as a condominium owner and member of the Association, are clearly not at issue before us. Consequently, our analysis stands confined solely to the rights between Mr. Ledet and the Insurers inter se.

"A true third party beneficiary is never a party to the contract in question; he is never a promisee. The promisee is the stipulator and the promise runs to him and is merely in favor of the third party." Joseph , 939 So.2d at 1211, citing Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui , 11 Tul. L. Rev. 18, 33 (1936).

La. C.C. art. 1831 provides, in part, that "[a] party who demands performance if an obligation must prove the existence of the obligation."

We find no mandate in the Act requiring the Association to provide property coverage for individual unit owners, nor do we find the Association purchased such coverage in the instant case. Instead, under the Act, which requires the Association to obtain insurance "to the extent reasonably possible," the provision of property coverage is a matter between the Association and the Insurers, and Mr. Ledet's discontent with the scope of coverage the Association purchased for the Carol is properly directed to the purchaser of the insurance, not the provider.

Mr. Ledet argues that the requisite certainty of the benefit provided to him-"insurance coverage of Unit 9-B for its full replacement cost"-is found in Section 13(a) of the Declaration ("and hence the Policy incorporating it"), wherein it defines "[i]nsurable replacement cost" as "the cost of restoring the Common Elements, Units or any part thereof to substantially the same condition in which they existed prior to the damage or destruction." According to Mr. Ledet, unless the property damage occasioned to the Carol exceeded the Policy limits (i.e. , $26,007,500), the benefit certain to accrue to him is the cost of restoring his individual unit to substantially the same condition in which it existed prior to the damage caused by the ruptured water pipe.

Mr. Ledet contends the benefit derived to him from the Policy is not a "mere incident" to the insurance contract, but rather, is intentionally conferred upon him. Specifically, he claims the Policy was purchased to satisfy the Association's legal obligation owed to unit owners under the Declaration to insure their individual units "for the full insurable replacement cost." He claims this is a direct benefit to unit owners as shown by the Policy, wherein "Covered Property" is defined as including certain property "contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it ...." Next, he argues that specific Policy provisions-those which provide coverage for property he owns; grant the Insurer the option to adjust losses and make payments directly to him up to his "financial interest in the Covered Property;" provide that the coverage afforded "is intended to be primary" over other insurance covering his property; and contain a waiver of the Insurers' rights to recover payment from him-constitute express stipulations which manifest a clear intent to directly benefit unit owners, thereby giving them, as third party beneficiaries of the Policy, "the right to demand specific performance from the promisor [i.e. , Insurers]," under La. C.C. art. 1981.