LEON A. CANNIZZARO, JR., Judge.
|,The plaintiff, Cox Communications (“Cox”), appeals a district court judgment rendered in its favor against the defendants, Tommy Bowman Roofing, L.L.C. (“Bowman Roofing”), and its insurer, Colony Insurance Company.
FACTS AND PROCEDURAL HISTORY
Cox entered into a contract with Bowman Roofing to replace the roof of its office building located at 2120 Canal Street in New Orleans. During the course of the work, vapors from the asphalt surface primer entered the building through an air-intake vent on the roof. Due to the noxious odor emanating from the vapors, Cox’s management ordered the evacuation of the building. As a result, Cox’s sales representatives and service employees were away from the office building for approximately three hours.
Cox subsequently filed suit against the defendants, seeking to recover the loss of revenue and profits, lost wages, medical expenses, attorney fees, and litigation costs that it incurred as a result of the evacuation. Alternatively, Cox claimed that the written contract between the parties contained an indemnity | ^provision that required Bowman Roofing to indemnify Cox for any claims resulting from Bowman Roofing’s negligent performance under the contract.
Following a trial, the trial court found that Cox sustained a loss of profits due to Bowman’s negligence and determined that the indemnity provision in the contract required the defendants to indemnify Cox against third party claims only. The trial court rendered judgment against the defendants, awarding Cox loss of profits of $3,428.00, employee medical expenses of $450.90, and attorney fees of $337.50, with interest from the date of judicial demand as well as the costs of the proceedings.
DISCUSSION
On appeal, Cox argues that the trial court erred in interpreting the contractual indemnity provision as requiring Bowman Roofing to indemnify, defend and hold harmless Cox for only third party claims against Cox. Cox contends that the contractual provision does not expressly limit indemnification to third party claims and, therefore, Bowman Roofing must indemnify it for its total losses as a result of the roofing contractor’s negligence, including loss revenue, attorney fees and litigation expenses incurred to recover those losses.
*164 Standard of Review
In Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court discussed the scope of the appellate court’s review of a trial court’s findings of fact as follows:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly 1 swrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong....
When findings are based on determinations regarding the credibility of witnesses, the manifest error- — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
Id. at 844.
Where the trier of fact, however, has not applied the correct law in arriving at its conclusions, the standard of review that this Court must use is different. In the Rosell case, the Supreme Court stated:
Nevertheless, when the court of appeal finds that- a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits.
549 So.2d at 844, n. 2, citing Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
Applicable Law and Analysis
The general rules that govern the interpretation of other contracts apply in construing a contract of indemnity. Soverign Ins. Co., v. Texas Pipe Line Co., 488 So.2d 982 (La.1986). Contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties. La. C.C. arts. 1983 and 2045. If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La. C.C. art. [42046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Whether or not a contract is ambiguous is a question of law. American Deposit Ins. Co. v. Myles, 00-2457 (La.4/25/01), 783 So.2d 1282, 1286.
The indemnity provision set forth in paragraph 10 of the Independent Contractor Agreement between Bowman Roofing and Cox reads as follows:
Contractor shall indemnify, defend and hold harmless Cox, its officers, directors, shareholders, employees, agents and representatives, from any and all claims, demands, losses, costs (including attorney’s fees), expenses and liabilities of any nature whatsoever in connection with or resulting from Contractor’s performance under this Agreement, the fulfillment of Contractor’s obligations or failure to fulfill its obligations under this Agreement, the breach of any representation or warranty made by Contractor under this Agreement, the conduct of Contractor’s employees or agents, and/or the breach of any Applicable Laws by Contractor, its employees or agents.
*165 Furthermore, the insurance provision set forth in paragraph 9 of the agreement requires that Cox be named as an additional insured under the Contractor’s General and Automobile liability policy.
In his reasons for judgment, the trial court stated that he disagreed with Cox’s suggested interpretation of the indemnity agreement, as it would lead to absurd consequences, i.e., Bowman Roofing would have to defend, indemnify and hold harmless Cox against Cox. After reviewing the written contract, we find that the trial court erred as a matter of law in determining that the indemnity provision required Bowman Roofing to indemnify Cox only for third party claims against the company.
This is not a dispute in which Cox is seeking indemnity for its | Rown negligence. If that were the case, i.e., the indemnitee was to be indemnified for its own negligence, the contract must unequivocally demonstrate such an intent. See Perkins v. Rubicon, Inc., 563 So.2d 258 (La.1990) and Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977). Rather, in this case, Cox seeks indemnification for all claims resulting from Bowman Roofing’s negligent performance under the contract. That being said, we now examine the contractual provision at issue.
Here, the indemnity provision contains no limiting language and, read literally, applies to any and all claims brought in connection with or resulting from Bowman Roofing’s performance under the contract. Moreover, when the indemnity provision is interpreted in light of the other provisions and the contract as a whole, the intent to indemnify Cox against all claims arising from the contractor’s performance under the contract is evident. As the language of the indemnity provision is unambiguous and the intent of the parties is clear from consideration of the contract as a whole, further interpretation is not warranted.
In view of our findings that the indemnity provision requires Bowman Roofing to indemnify Cox for all claims resulting from the roofer’s negligent performance of the work and that, as a matter of law, the trial court erred in holding otherwise, we must now conduct a de novo review to determine whether Cox sustained any damages and, if so, the amount thereof.
Cox contends that as a result of the forced three-hour evacuation it is entitled to lost profits and wages of $26,148.78, the attorney fees of Ungarino & Eckert, L.L.C., and litigation expenses, including the expenses of the certified public accounting firm of Legier & Materne.
Mr. Elvin Thibodeaux, Jr., Cox’ s regional safety and risk manager, testified that following the evacuation his department conducted an investigation in order to file a claim with Colony Insurance Company. Based on payroll records and | ¿interviews with the employees, the safety and risk department determined that Cox had sustained substantial business disruptions and productivity losses. Cox introduced into evidence the Itemized Loss form prepared by Mr. Thibodeaux that listed Cox’s total losses as $26,148.79. This sum included $22,000.00 for loss of business revenue, $600.00 for loss of video production revenue and $3,548.79 for lost wages of the employees who had evacuated the building. Mr. Thibodeaux testified that after he had submitted the Itemized Loss form to Colony Insurance Company for payment and received no response, Cox retained the law firm of Ungarino & Ec-kert to pursue a tort claim against the defendants. According to Mr. Thibodeaux, Cox incurred $16,946.23 in attorney fees in litigating the claim. He further testified that Cox retained the services of Legier & *166 Materne to calculate the company’s total losses as a result of the incident and to verify whether the risk department’s itemized loss estimate was accurate. Mr. Thi-bodeaux also verified the claim forms and invoices that Cox introduced at trial as evidence that it paid $461.70 in medical expenses for three employees who were injured as a result of inhaling the harmful vapors.
Mr. John Collier, a certified public accountant with Legier & Materne and Cox^s business valuation expert, testified that Cox retained the accounting firm to conduct a study to determine whether the company had sustained any lost profits and lost wages in connection with the evacuation. As part of the study, Mr. Collier reviewed numerous documents, including Cox’s income statements from May 31, 2000 through November 30, 2002, as well as weekly sales projection reports from July 5, 2001 to August 30, 2001. He also interviewed Cox supervisory personnel. Mr. Collier explained that he compared the revenue generated for two months before and after the evacuation and came up with a figure of $3,809.42 as an [7average of sales revenue per hour. He estimated the total lost sales profits for the three-hour period to be $10,514.00. As to the lost wages, Mr. Collier testified that the total lost wages of non-sales employees who had evacuated the building amounted to $3,051.99. The report produced by Legier & Materne listed Cox’s total losses, including interest, at $15,307.36. According to Mr. Collier and the invoices introduced into evidence, Legier & Materne billed Cox a total of $14,608.73 for its services.
To corroborate Mr. Thibodeaux and Mr. Collier’s testimony that Cox lost sales revenue during the evacuation because its sales representatives were not available for incoming calls from prospective advertisers, Cox presented the testimony of its business manager, Ms. Antoinette Antoine. Ms. Antoine testified that the sales department employed 13-15 people who were paid a base salary plus commission and were given an hour lunch period each day. She testified that potential sales in the form of short notice calls, i.e., an advertiser’s commercial would run within 24 hours of the sale, encompassed approximately 15% of the calls. If the calls came for a particular sales representative during lunch, the sales representative would be paged. If he or she could not be reached, the call would be transferred to an available representative. Ms. Antoine also testified that 15% to 20% of the sales calls each month came from new customers.
Kenneth Boudreaux, Ph.D., a forensic economist, testified as an expert for the defense. In his opinion, Mr. Collier’s methodology exceeded the “boundaries of confidence,” making it inherently flawed. Dr. Boudreaux testified that the sales department’s sales depend upon a variation of outside and inside calls making it difficult to average the loss as Mr. Collier did. In Dr. Boudreaux’s opinion, a more accurate method of calculation of lost sales would have been the difference ^between the profitability of the company over that period of time if the incident had not occurred versus the actual profitability of the company over that period of time. Essentially, Dr. Boudreaux explained, it is a “but for the event versus an actual set of measurements.” Dr. Boudreaux acknowledged that Cox probably sustained a loss as a result of the evacuation, but he did not determine the amount of that loss.
As a general rule damages for loss of profits may not be based on speculation and conjecture, however, such damages need be proven only within reasonable certainty. Lavigne v. J. Hofert Co., 431 So.2d 74, 77 (La.App. 1st Cir.1983). Broad latitude is given in proving lost *167 profits because this element of damages is often difficult to prove and mathematical certainty or precision is not required. Louisiana Farms v. Louisiana Department of Wildlife and Fisheries, 95-845, p. 36 (La.App. 3 Cir. 10/9/96), 685 So.2d 1086, 1105.
Cox contends that it sustained a total loss of profits and wages of $26,148.78, yet its own expert, Mr. Collier, testified to the contrary. After reviewing the evidence in the record, we find that Mr. Collier’s estimate of $15,307.36 for the total loss of profits and wages, including interest, is also excessive. In calculating the lost profits due to the sales representatives’ absence during the evacuation, Mr. Collier deducted neither the base salaries nor the commissions that would have been owed to the sales representatives. In addition, the record indicates that during the evacuation period the facsimile (fax) and telephone lines were not interrupted and the sales representatives had voice mail to record incoming calls. Several of the sales representatives had cellular phones available to make calls and some, if necessary, could have met in person with prospective customers during the evacuation period. The trial court determined 19that Cox incurred some loss of revenue in the form of short sales and new sales calls, a finding that is supported by both the plaintiff and defendants’ experts. Thus, we will adopt the trial court’s sum of $3,428.00 as the amount of lost profits sustained by Cox during the evacuation, as this figure is both reasonable and supported by the evidence.
As to lost wages and revenues attributable to non-sales employees, we find Cox suffered no such loss. Cox did not present any evidence indicating that its customer base had decreased due to the customer service representatives’ absence or that its revenue from customer billing decreased during the evacuation.
The defendants did not refute the evidence offered by Cox to prove that it paid $461.70[1] in medical expenses for the three employees who required medical care as a result of inhaling the vapors. Therefore, we find Cox may recover these medical expenses.
Regarding attorney fees, the indemnity agreement provides that Bowman Roofing is to indemnify Cox for the attorney fees incurred as a result of the contractor’s negligent performance of the work. The invoices in evidence indicate that Ungarino & Eckert billed Cox a total of $16,946.23 to litigate the claim. After reviewing the evidence in the record, we find this amount is warranted. Colony Insurance Company failed to respond in any way to either Cox’s original demand letter or invoice for payment of the losses. Thus, Cox had no choice but to retain an attorney to litigate the claim. Furthermore, the invoices reflect that Ungarino & Eckert attorneys expended considerable time and effort in conducting discovery, preparing for trial and bringing this matter to judgment. Under these | ^circumstances, we find $16,946.23 is a reasonable amount for attorney fees in this matter.
Finally, based on our review of the evidence, we find that Legier & Ma-terne’s total fee of $14,608.73 is excessive and unwarranted considering the claim in dispute. Although Cox chose to retain the services of Legier & Materne to conduct a business valuation to verify whether it had sustained any losses as a result of the three-hour evacuation, it was not neces *168 sary to do so. It is apparent from Mr. Thibodeaux’s testimony that Cox’s safety and risk department was able to make such a determination. Nonetheless, because Colony Insurance Company made no offer to compensate Cox for any loss and Cox has litigated the claim successfully, we find that it is entitled to recover a reasonable sum for Mr. Collier’s services as a trial expert. The record reflects that Mr. Collier’s fee was $189.00 per hour. Thus, we will award Cox $3,780.00 for his services.
CONCLUSION
Accordingly, for the reasons stated herein, the judgment of the trial court is amended in part to award Cox Communications $461.70 in medical expenses, $16,946.23 in attorney fees, $3,780.00 for Mr. Collier’s services and to delete $14,608.73 for the fees of Legier and Má-teme, and, as amended, the judgment is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.
MURRAY, J., dissents in part with reasons.
TOBIAS, J., dissents in part and assigns reasons.
hThe starting point in determining the meaning of the indemnity provision is the language of the contractual provision, which reads as follows:
Contractor [ (Bowman Roofing)] shall indemnify, defend and hold harmless Cox, its officers, directors, shareholders, employees, agents and representatives, from any and all claims, demands, losses, costs (including attorney’s fees), expenses and liabilities of any nature whatsoever in connection with or resulting from Contractor’s performance under this Agreement, the fulfillment of Contractor’s obligations or failure to fulfill its obligations under this Agreement,' the breach of any representation or warranty made by Contractor under this Agreement, the conduct of Contractor’s employees or agents, and/or the breach of any Applicable Laws by Contractor, its employees or agents.
In construing the above provision, the majority reasons that the parties’ failure to include any limiting language requires the provision be read literally as applying to “all claims brought in connection with or resulting from Bowman Roofing’s performance under the contract.” The majority thus reverses the trial court’s finding that the indemnity provision requires Bowman Roofing to indemnify Cox only for third party claims. I disagree.
The terminology the parties employed in the indemnification agreement — “indemnify, defend and hold harmless” — evidenced, albeit implicitly, the limited nature of the agreement they intended. See La. C.C. art. 2047 (providing that “[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter.”) By definition, an indemnity or hold | ¡^harmless agreement is “a contract whereby a party, called the in-demnitor, agrees to protect another, called the indemnitee, against damages incurred by the latter as a result of his breach of a duty owed to a third party.” 6 Saul Litvinoff, Louisiana Civil Law Treatise: The Law of Obligations Part II, § 11.27 (1999). The purpose of such an agreement is to “allocate the risk of loss or damage which may arise in the performance of their respective obligations.” Id. Stated otherwise, “[indemnity agreements merely shift from the indemnitee to the indemnitor a specific loss, liability, or duty to respond in damages [to a third party] that is or may be incurred by the indemnitee in the course of contractual performance.” Id. Because of the nature of the agreement, it is implicit that the parties intended for *169 Bowman Roofing to indemnify Cox for any third party claims made against Cox as a result of the work performed under the contract. The trial court thus was correct in construing the indemnity provision as limited to third party claims.
Accordingly, I would affirm the trial court’s decision limiting Cox’s recovery under the indemnification agreement to $337.50 in attorney’s fees for the subrogation claim and $450.90 for the employees’ medical expenses. For these reason, I respectfully dissent in part.

. The trial court awarded Cox $450.90 in employee medical expenses. Our review of the pertinent invoices, however, indicates that Cox paid $461.70 in medical expenses.