Richard E. King, Jennifer L. Simmons, Scott R. Huete, MELCHIODE MARKS KING, LLC, 639 Loyola Avenue, Suite 2550, New Orleans, LA 70113, COUNSEL FOR THIRD PARTY DEFENDANTS/APPELLANTS
Hunt Downer, Mary W. Riviere, Joseph L. Waitz, Jr., David C. Pellegrin, Jr., Joseph L. Waitz, III, WAITZ & DOWNER, 423 Goode Street, Houma, LA 70360, COUNSEL FOR PLAINTIFFS/APPELLEES
Robert T. Myers, YOUNG, RICHAUD & MYERS, 3850 N. Causeway Blvd., Suite 1830, Metairie, LA 70002, John A. Scialdone, John S. Garner, SCIALDONE LAW FIRM, PLLC, 1319 24th Avenue, Gulfport, MS 39501, COUNSEL FOR DEFENDANTS/APPELLEES
Susan A. Daigle, J. Daniel Rayburn, Jr., DAIGLE RAYBURN, LLC, 303 W. Vermillion Street, Suite 210, P.O. Box 3667, Lafayette, LA 70502-3667, Kelley A. Sevin, Elton F. Duncan, III, DUNCAN & SEVIN, LLC, 400 Poydras Street, Suite 1200, New Orleans, LA 70130, COUNSEL FOR THIRD PARTY DEFENDANTS/APPELLEES
(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Regina Bartholomew-Woods )
Judge Joy Cossich Lobrano
In this insurance coverage dispute, appellants, Zurich American Insurance Company ("Zurich") and American Guarantee and Liability Insurance Company ("AGLIC"), seek review of three district court judgments dated December 7, 2016, June 16, 2017, and December 19, 2017. For the reasons that follow, we affirm all three judgments.
This litigation arises from a September 26, 2013 accident on an oilfield platform owned by Integrated Exploration & Production, L.L.C. ("Integrated") in Lake Borgne in St. Bernard Parish. Plaintiff, Dustin Rogers, was an employee of Valerus Compression Service, L.L.P. ("Valerus") at the time of his accident; and Coastal Marine Contractors, L.L.C. ("Coastal Marine") was Integrated's subcontractor at the time of the accident.
At the time of Rogers' accident, a Master Contract Service Agreement ("MCSA") and a Schedule B Services Contract, both between Valerus and Integrated, were in place, which governed the work performed by Valerus for Integrated on the platform. The MCSA contained a "knock for knock" reciprocal indemnification provision, which was triggered whenever the employee of one party sued the other party or a member of its subcontractor "Group" such that each party was responsible for the injuries of its own respective employees, regardless of fault.[1]
*884 The MCSA also required that Valerus and Integrated obtain commercial liability insurance and name each other as additional insureds. The MCSA did not require Valerus to name a subcontractor such as Coastal Marine as an additional insured. However, the MCSA required that a member of Integrated's "Group" (including its subcontractors, such as Coastal Marine) was entitled to defense and indemnification from Valerus for tort liability for injuries sustained by an employee of Valerus, such as Rogers.
Thus, several insurance policies are implicated in this matter. Valerus obtained a policy of primary insurance from Zurich, with policy limits of $ 1 million, and an excess policy from AGLIC, with limits of $ 25 million. Integrated obtained primary and excess policies from Gemini Insurance Company ("Gemini"), with policy limits of $ 1 million and $ 4 million, respectively. Coastal Marine obtained a policy of primary insurance from Atlantic Specialty Insurance Company ("Atlantic"), with policy limits of $ 1 million, and excess insurance from New York Marine and General Insurance Company ("New York Marine"), with limits of $ 10 million.
Following the accident, Dustin Rogers and Lacey Rogers (collectively "plaintiffs") brought claims against Integrated and Coastal Marine. Integrated subsequently filed a third party demand against Valerus and Zurich, seeking contractual defense and indemnification pursuant to the MCSA. Coastal Marine, likewise, brought a cross claim against Zurich (but not Valerus), seeking contractual defense and indemnification pursuant to the MCSA. In its cross claim, Coastal Marine alleged that it was Integrated's subcontractor and a member of the MCSA Customer "Group" entitled to defense and indemnification for tort liability for the injuries allegedly sustained by Rogers. Integrated, Coastal Marine, and their insurers thereafter brought third party demands, reconventional demands, and cross claims between them relative to the ensuing insurance coverage disputes.
On February 12, 2016, Valerus filed an exception of prematurity on the basis of an arbitration clause contained in the MCSA. On March 17, 2016, the district court granted the exception pursuant to a consent judgment, dismissing Valerus without prejudice. None of the other parties filed any pleadings in the district court seeking to invoke the arbitration cause; thus, this litigation was not stayed and proceeded in the district court in Valerus' absence.
Zurich and AGLIC have raised numerous coverage defenses in this litigation. In particular, they argue that the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") renders the defense and indemnification provisions in the MCSA unenforceable. They also contend that a limitation of liability provision in the MCSA limits Integrated's recovery from Valerus, and thus its insurers, to the amount that Integrated paid Valerus in the six months before Rogers' accident, which was $ 0. They further argue that there is no coverage for Integrated's and Coastal Marine's negligence. They also contend that Coastal Marine's contractual claim against Zurich is barred by the Louisiana Direct Action Statute ("LDAS"), where Coastal Marine has not made a claim against Zurich's insured, Valerus.
The district court rendered the three following judgments, which are at issue in the instant appeal.
*885 The first judgment, dated December 7, 2016, granted summary judgment in favor of Integrated and ordered Zurich to provide defense and indemnification to Integrated. In this judgment, the district court also denied Zurich's motions for summary judgment seeking dismissal of Integrated's and Coastal Marine's defense and indemnification claims.[2]
Prior to trial on January 9, 2017, the parties reached a settlement agreement wherein plaintiffs would receive $ 5 million, plus judicial interest, with all other parties reserving all rights against each other, including their respective contractual defense and indemnification and insurance coverage claims.[3]
The second judgment was rendered on June 16, 2017, which denied Zurich's peremptory exceptions of no cause of action and no right of action and granted Coastal Marine's motion for judgment on the pleadings, ordering Zurich to provide defense and indemnification to Coastal Marine.
In the third judgment, dated December 19, 2017, the district court granted summary judgment in favor of Integrated, Gemini, and New York Marine and ordered the following. Zurich and AGLIC were ordered to provide coverage to Valerus for defense and to indemnify Integrated and Coastal Marine for this litigation and the settlement with plaintiffs. In order to fund the settlement, Zurich was ordered to tender $ 1 million, plus accrued interest, to plaintiffs, and AGLIC was ordered to tender $ 4 million, plus accrued interest from the date of settlement January 9, 2017, to plaintiffs. Zurich and AGLIC were also ordered to pay Integrated's and Coastal Marine's attorney's fees, defense costs, and court costs.[4] Zurich's motion for summary judgment to rank insurance policies and seeking contribution for funding the settlement was denied.
This appeal followed, in which Zurich and AGLIC raise six assignments of error:
1. Despite the dismissal of Valerus due to a binding arbitration clause, the Trial Court nevertheless rendered determinations as to the defense and indemnity obligations of Valerus and binding coverage for such determinations under the Zurich and AGLIC policies.
2. The Trial Court erred in denying Zurich's peremptory exceptions of no cause of action and no right of action and ruling that Coastal Marine could maintain a direct action against Zurich, a third-party insurer, despite not also asserting a claim against Zurich's insured, Valerus.
3. The Trial Court erred in ruling that the Limitation of Liability provision of the MCSA was inapplicable for purposes of determining the limitation of liability owed by Valerus to Integrated under the terms of the MCSA.
4. The Trial Court erred in ruling that the Zurich and AGLIC policy exclusions were inapplicable to the coverage *886 claims asserted by Integrated and Coastal Marine.
5. The Trial Court erred in ruling that Integrated and Coastal Marine's own insurers did not provide coverage for the negligence of Integrated and Coastal Marine.
6. The Trial Court erred in ruling that LOAIA did not invalidate the defense and indemnification provisions contained in the MCSA in light of the fact that the MCSA explicitly incorporates the terms of LOAIA.
We first address Zurich's and AGLIC's argument that the district court erred in its findings as to their defense and indemnification and coverage obligations under the Zurich and AGLIC policies. We then address each of the assignments of error, as they apply to the three judgments on appeal.
With respect to the December 7, 2016 judgment, which forms the basis for Zurich's and AGLIC's third and sixth assignment of error, the district court ruled on motions for summary judgment. An appellate court's "review of a grant or denial of a motion for summary judgment is de novo ." Jones v. Estate of Santiago , 2003-1424, p. 5 (La. 4/14/04), 870 So.2d 1002, 1006. Summary judgment procedure is favored in Louisiana. La. C.C.P. art. 966(A)(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).
Regarding the burden of proof on summary judgment, La. C.C.P. art. 966(D)(1) states:
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.
In its sixth assignment of error, Zurich and AGLIC argue that the district court erred by concluding that LOAIA did not apply to the MCSA and by finding the defense and indemnification provision in the MCSA enforceable. In its reasons for judgment, the district court articulated that the MCSA did not "pertain to a well," and as a result, LOAIA did not render the defense and indemnification provision void.[5]
LOAIA is found in La. R.S. 9:2780 and provides, in pertinent part, that certain defense and indemnification agreements "pertaining to a well" are unenforceable:
B. Any provision contained in, collateral to, or affecting an agreement pertaining *887 to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
To determine whether LOAIA is applicable, "courts have engaged in a two-step test." Fontenot v. Chevron U.S.A. Inc. , 95-1425, p. 10 (La. 7/2/96), 676 So.2d 557, 564 (citing Transcontinental Gas v. Transportation Ins. Co. , 953 F.2d 985, 991 (5th Cir.1992) (" Transco ") ).[6] "First, there must be an agreement that 'pertains to' an oil, gas or water well." Id. "Second, the agreement must be related to exploration, development, production, or transportation of oil, gas, or water." Id.
"If the contract does not pertain to a well, the inquiry ends." Transco , 953 F.2d at 991. "Only if we determine that the contract has the required nexus to a well may we proceed to the second step of the process, examination of the contract's involvement with 'operations related to the exploration, development, production, or transportation of oil, gas, or water.' " Id. "LOAIA is not applicable if the work required by the contract is performed on gas transmission equipment at 'a reasonably determinable point at which the gas can no longer be identified with a particular well, or is so fundamentally changed in processing, commingling, or preparing it for distribution to its ultimate end user, that the gas no longer 'pertains to a well.' " Lloyds of London v. Transcon. Gas Pipe Line Corp. , 38 F.3d 193, 196 (5th Cir. 1994) (" Lloyd's ")(citing Transco , 953 F.2d at 991 ). "The Transco court listed ten non-exclusive factors relevant to this determination." Id. (footnote in original).[7]
*888 In its December 7, 2016 reasons for judgment, the district court explained that no genuine issue of material fact existed as to the "identification of gas to any particular wells." The district court found that "three pipelines bring gas from three separate wells which upon entry on the platform are commingled for the scrubbing and compression process" and "that once upon the platform the gas is commingled and can no longer be identified with a particular well."
It was undisputed that there was no active well on the Integrated platform, and the platform was a scrubbing station. The purpose of the platform was to process commingled gas from wells in the field and redeliver the processed gas at an outlet point ready for sale. The nearest gas well was located within one and a half miles of the Integrated platform. The only pipelines that ran to the Integrated platform were owned by Integrated, and no other facility intersected between these wells and the Integrated platform. Integrated had the capability to monitor the flow from each of these wells and could cut the flow from each well, should it have been necessary. The gas from the three pipelines was immediately commingled upon reaching Integrated platform. J. Lee Harrell, who testified on behalf of Integrated, described this commingling as taking place in "a snap of a finger."
The district court adopted the reasoning of Hughes v. Pogo Producing Co. , No. 06-1894 (W.D. La. 3/11/09), 2009 WL 667186 as the basis for its finding that such commingling precludes the application of LOAIA. The Hughes platform was a commingling station where gas from three incoming pipelines was further commingled and pumped into one pipeline destined for a refinery. Id. at p. 6. This platform was not an active, producing well. Id. No well that eventually fed production through the platform was located closer than five miles from the platform, and the platform was "closely related to a pipeline," because its sole purpose was to further commingle product from incoming pipelines to larger outgoing pipelines. Id. Thus, the court concluded that the work performed under the contract "was to be performed on gas transmission equipment located 'at a reasonably determinable point at which the gas can no longer be identified with a particular well, or is so fundamentally changed in processing, commingling, or preparing it for distribution to its ultimate end user, that the gas no longer 'pertains to a well.' " Id. at p. 8 (quotation omitted).
Zurich and AGLIC attempt to distinguish this matter from Hughes in that, here, the platform and all three pipelines, from which gas was commingled, were owned by Integrated. They cite, however, to no case that has found a commingling platform such as this one "pertains to a well." As the U.S. Fifth Circuit explained in Lloyd's , LOAIA does not apply where work is performed at a "reasonably determinable point" at which the gas can no longer be identified with a particular well, or is so fundamentally changed in commingling *889 or preparing it for distribution that the gas no longer pertains to a well. 38 F.3d at 196. We see no reason to reach a different result here merely because the commingled gas comes from pipelines all owned by Integrated. Accordingly, we find no error in the district court's conclusion that LOAIA does not apply to the facts of this case.
In their third assignment of error, Zurich and AGLIC argue that the district court erred by failing to apply the MCSA's limitation of liability provision. They contend that, under the MCSA, any liability owed by Valerus to Integrated could not exceed the total amount paid by Integrated to Valerus in the six months prior to the date on which such claim arose. According to Zurich's and AGLIC's argument, because Integrated paid nothing to Valerus in the six months before Rogers' accident, Integrated is not entitled to any indemnification. Zurich and AGLIC do not argue on appeal that the limitation of liability applies to Coastal Marine.
"Contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties." Cox Commc'ns v. Tommy Bowman Roofing, L.L.C. , 2004-1666, p. 3 (La. App. 4 Cir. 3/15/06), 929 So.2d 161, 164 (citing La. C.C. arts. 1983 and 2045). If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La. C.C. art. 2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
"When absurd results are possible from a reading of a contract, it is ambiguous, and the courts must construe the provision in a manner consistent with the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties." Vignette Publications, Inc. v. Harborview Enterprises, Inc. , 2000-1711, p. 10 (La. App. 4 Cir. 9/12/01), 799 So.2d 531, 537 (citing La. C.C. art. 2053 ; Doerr v. Mobil Oil Corp. , 2000-0947, p. 6 (La. 12/19/00), 774 So.2d 119, 124 ). "Words of art and technical terms must be given their technical meaning when the contract involves technical matter and words susceptible of different meanings are to be interpreted as having a meaning that best conforms to the object of the contract." Id. (citing La. C.C. arts. 2047 - 2048 ). Ambiguous clauses are construed against the drafter. Armstrong Airport Concessions v. K-Squared Rest., L.L.C. , 2015-0375, p. 18 (La. App. 4 Cir. 10/28/15), 178 So.3d 1094, 1106.
Here, Valerus drafted the MCSA. The limitation of liability provision, found in Section 12 of the MCSA, provides as follows:
12. Limitations of Liability.
(a) Notwithstanding anything contained herein, the aggregate liability of Valerus for Claims made by Customer in respect of loss or damage arising out of or in connection with the provision of the Services or any breach of Valerus' obligations under any Services Contract, whether arising for breach of contract, tort, negligence or otherwise, shall not exceed the total amount paid by Customer to Valerus under the applicable Services Contract in the previous six (6) months from the date on which such claim arose .
(Emphasis in original).
In the MCSA, "Customer" is defined as Integrated. "Claims" are defined as "any *890 and all claims, damages, liabilities, losses, demands, liens, encumbrances, causes of action of any kind, costs and expenses (including reasonable attorneys' fees), judgments, interest, and awards, whether created by law, equity, contract, tort, or otherwise." "Services" are defined as "turnkey compression and other services that are detailed on such Services Contract." The Schedule B Services Contract further defines "Services" as "receive Customer's gas... at the inlet point, [ ] perform compression services and then [ ] redeliver the gas to Customer at the outlet point within the range of the designated discharge pressure..." "Party" or "Parties" are defined as Valerus and Integrated.
The insurance and indemnification provisions are found, respectively, in Sections 10 and 11, and provide, in pertinent part, as follows:
10. Insurance.
(a) Customer and Valerus shall each maintain in full force and effect during the term of this Agreement, at its sole cost and expense, the insurance described below;
(i) Commercial general liability, including bodily injury, property damage, independent contractor, products/completed operations, contractual and personal injury liability, with a combined single limit of $ 1,000,000, per occurrence.
* * *
(iv) Excess Liability Insurance over that required in Sections 10(a)(i) and (iii) above, which shall provide coverage at least as broad as the underlying policies, with minimum limits of U.S. $ 1,000,000, and specifically including contractual liability.
* * *
(b) Each Party, its affiliates, directors, officers, employees and agents shall be named as additional insureds on the policies required pursuant to Section 10(a) (the "Required Policies ") and provided a waiver of subrogation with respect to the Required Policies by the other Party or Parties, but only to the extent of the indemnity obligations expressly assumed by the insuring Party under this Agreement. The obligations of each Party, with respect to the maintenance of insurance under this Agreement, are separate and apart from each Party's respective indemnification obligations under this Agreement, and such indemnification obligations shall not be limited in amount or scope to coverages provided by the insurance required by this Section 10.
* * *
11. Indemnification.
* * *
(a) In General. Except as otherwise provided in this Agreement, EACH PARTY AGREES TO RELEASE, DEFEND, INDEMNIFY, AND HOLD HARMLESS THE OTHER PARTY AND ITS RESPECTIVE GROUP FROM AND AGAINST any and all claims, damages, liabilities, losses, demands, liens, encumbrances, causes of action of any kind, costs and expenses (including reasonable attorneys' fees), judgments, interest, and awards, whether created by law, equity, contract, tort, or otherwise (collectively, "Claims ") for (i) any personal injury to any of the indemnifying Party's employees or independent contractors and/or (ii) property loss or damage relating to the indemnifying Party's facilities and equipment. For purposes of the foregoing, a Party's "Group " means that Party and its contractors (except that Customer's Group excludes Valerus and its subcontractors), subcontractors, co-interest owners, joint venturers, co-lessees, and invitees, *891 and their respective affiliates, shareholders, officers, directors, employees, agents, consultants, and servants.
* * *
(e) Scope of Indemnification. The obligations of each Party to indemnify the other Party under this Section 11 shall apply EVEN IF SUCH CLAIMS ARE CONTRIBUTED TO OR CAUSED BY THE SOLE, JOINT, COMPARATIVE, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF THE INDEMNIFIED PARTY OR ANY MEMBER OF ITS GROUP, STRICT LIABILITY, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRA-HAZARDOUS ACTIVITY, TORT, BREACH OF CONTRACT, BREACH OF STATUTORY DUTY, BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR OTHER FAULT OF THE INDEMNIFIED PARTY OR ANY MEMBER OF ITS GROUP . However such indemnification obligations shall not apply in the event of the gross negligence or willful misconduct of the indemnified Party.
* * *
(g) Indemnity Not Altered by Third Party Obligations. All indemnities in this Agreement shall apply even though an insurer or other person or entity is required to pay for any Claim or to make a contribution to such Claim. Even though insurance may be arranged or other persons or entities may have certain liabilities or obligations, each Party remains responsible for its indemnity and other obligations under this Agreement, even if such insurer or such other person or entity, for any reason, does not pay.
(Emphasis in original).
We find no merit in Zurich's and AGLIC's contention that Section 12 limits the amount of indemnification that Integrated can receive under Section 11 for damages sought by Valerus employees such as Dustin Rogers. The limitation of liability language is contained in the section of the MCSA dealing with performance of the contract, which is separate from the indemnification provision. Section 12 is silent as to indemnification and insurance. Indemnification and insurance obligations are set forth separately in Sections 10 and 11. Section 10 is also explicit that the obligations to maintain insurance are separate from the indemnification obligations in Section 11 "and such indemnity obligations shall not be limited in amount or scope to coverage provided by the insurance required..."
Moreover, the limitation of liability language pertains to "the provision of the Services." Indemnification is not included in the definition of "Services." Reviewing Section 12 in light of the other provisions, indemnification is too attenuated from the services provided under the MCSA. Rather, we find, as the district court did, that Section 12 contemplates damages resulting from performance of the contract between Valerus and Integrated. We find no error in the district court's conclusion that the limitation of liability provision does not limit Valerus' obligation to defend and indemnify Integrated for Dustin Rogers' claims. This assignment lacks merit. As such, we affirm the district court's judgment of December 7, 2016.
We now consider the district court's December 19, 2017 judgment, in which we review the fourth and fifth assignments of error.
*892 In Zurich's and AGLIC's fourth assignment of error, they argue that their policies exclude coverage for Integrated's and Coastal Marine's indemnification claims, pursuant to (1) the broad form additional insured endorsement and (2) the Zurich policy limits.
We explained in King v. Old Republic Ins. Co. , 2016-0170, pp. 4-7 (La. App. 4 Cir. 9/7/16), 200 So.3d 989, 992-94 as follows:
"A dispute as to whether, as a matter of law, an insurance policy provides or precludes coverage to a party usually involves a legal question which can be resolved in the framework of a motion for summary judgment." Batiste v. City of New Orleans , 2011-1168, p. 3 (La. App. 4 Cir. 2/29/12), 85 So.3d 800, 802 (citing Dore v. Brignac , 2000-1719, p. 3 (La. App. 4 Cir. 6/20/01), 791 So.2d 736, 738.) "When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms." Doerr v. Mobil Oil Corp. , 2000-0947, p. 5 (La. 12/19/00), 774 So.2d 119, 124, modified on other grounds on reh'g , 2000-0947 (La. 3/16/01), 782 So.2d 573. "Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." Reynolds v. Select Properties, Ltd. , 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183 (citing Westerfield v. LaFleur , 493 So.2d 600, 605 (La. 1986) )....
"An insurer, like other individuals, is entitled to limit its liability and to impose and enforce reasonable conditions upon the policy obligations it contractually assumes; it may change or amend the coverage provided by the policy by an endorsement attached to the policy as long as the provisions and/or endorsements do not conflict with statutory law or public policy." Zeitoun v. Orleans Par. Sch. Bd. , 2009-1130, p. 4 (La. App. 4 Cir. 3/3/10), 33 So.3d 361, 365 (citing Louisiana Ins. Guar. Ass'n [v. Interstate Fire & Casualty Co. ], 93-0911 [p. 5] at p. 6, [ (La. 1/14/94),] 630 So.2d [759] at 763 ). "If an endorsement is attached to the policy and the policy and endorsements are parts of the same contract, the endorsement becomes part of the contract, and the two must be construed together." Zeitoun, 2009-1130 at p. 4, So.3d at 365 (citing Mattingly v. Sportsline, Inc. , 98-230, p. 7 (La. App. 5 Cir. 10/28/98), 720 So.2d 1227, 1230 ). "If a conflict between the endorsement and the policy exists, the endorsement prevails." Zeitoun, 2009-1130 at p. 4, So.3d at 365 (citing Chicago Property Interests, L.L.C. v. Broussard , 2008-526, p. 10 (La. App. 5 Cir. 1/13/09), 8 So.3d 42, 49 ). "If coverage is provided in the policy, but then excluded in the endorsement to the policy, coverage will be excluded." Id.
In arguing that the broad form additional insured endorsement excludes coverage for Integrated and Coastal Marine, Zurich and AGLIC raise three arguments. First, they contend that coverage for Integrated's sole negligence is excluded under the endorsement. Second, they argue that the MCSA does not require Valerus to provide coverage to Integrated for Integrated's sole act or omission. Third, they argue that the endorsement does not apply to Coastal Marine because the MCSA does not require Coastal Marine to be an additional insured.
Dustin Rogers was an employee of Valerus at the time of his accident. Section 10(a) of the MCSA required Valerus and Integrated to name each other as additional *893 insureds on each other's policies; thus, Integrated was required to be named as an additional insured on the Zurich and AGLIC policies. Zurich's broad form additional insured endorsement states:
A. Section II - Who Is An Insured is amended to include as an insured the persons or organizations shown in the Schedule of this endorsement. (BLANKET, AS REQUIRED BY WRITTEN CONTRACT)
B. The insurance provided to the additional insured shown in the Schedule of this endorsement applies only to "bodily injury" ... covered under Section I - Coverage A - Bodily Injury And Property Damage Liability and Section I - Coverage B - Personal And Advertising Injury Liability , but only with respect to liability for "bodily injury", "property damage" ... caused:
1. In whole or in part, by your acts or omissions or the acts of omissions of those acting on your behalf; or
2. Unless prohibited by law, solely by acts or omissions of such additional insured, if coverage for sole acts or omissions of the additional insured is required by written contract or written agreement, and resulting from:
a. Your ongoing operations; or
b. "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured at the location designated and described in the Schedule of this endorsement.
(Emphasis in original).
We disagree with Zurich's and AGLIC's contention that the endorsement wholly precludes coverage for both Integrated and Coastal Marine. As to Integrated, Zurich and AGLIC have not shown, with undisputed facts, that Rogers' injuries were not caused by acts of those acting on Valerus' behalf, or that Rogers' injuries were caused by Integrated's sole negligence. Zurich and AGLIC are not entitled to summary judgment, as a matter of law, that the endorsement does not provide coverage to Integrated as an additional insured. Further, Valerus obligated itself in Section 11 of the MCSA to defend and indemnify Integrated for its own negligence, and Valerus procured policies issued by Zurich and AGLIC that provide contractual coverage over obligations assumed in "insured contracts" including the MCSA. The Zurich policy defines "insured contract" as:
That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
We, thus, reject the argument that the endorsement precludes coverage for Integrated.
As to Coastal Marine, it is undisputed that Coastal Marine is not an additional insured under the Zurich and AGLIC policies, and that the MCSA does not require that Coastal Marine be named an additional insured under the Zurich and AGLIC policies. Rather, the MCSA requires that Valerus defend and indemnify both Integrated and its "Group," which includes Coastal Marine as Integrated's subcontractor, even for its sole negligence. Accordingly, Valerus procured coverage for its obligations under the MCSA. The MCSA is an "insured contract" for which the Zurich and AGLIC policies provide contractual coverage.
*894 With respect to policy limits, Zurich contends that it cannot be liable for more than its $ 1 million policy limits for Dustin Rogers' accident, which is a single occurrence. We find no evidence in the record that either the occurrence of a single accident or the amount of Zurich's policy limits is disputed. Zurich fails to explain and we fail to appreciate the impact of Zurich's argument on excess coverage owed by AGLIC. Moreover, the settlement herein is not a part of the record on appeal, such that we cannot extrapolate what other monies Zurich claims to owe under the settlement that are not reflected in this judgment. The district court ordered Zurich to pay $ 1 million to fund the settlement with plaintiffs. The district court ordered AGLIC to pay $ 4 million to fund the settlement with plaintiffs. There is no dispute in the record that plaintiffs settled their claims with Integrated and Coastal Marine for $ 5 million, with the insurance third party defendants reserving all rights against each other. There is nothing in the record that informs this Court that Zurich has been called upon to pay a judgment beyond its policy limits. This assignment lacks merit.
In their fifth assignment of error, Zurich and AGLIC argue that the district court erred by failing to apply the Louisiana jurisprudence concerning ranking insurance policies.[8] According to their argument, Integrated and Coastal Marine are named insureds on policies providing coverage for their negligence, and the district court should look to the "other insurance" clauses contained in the respective Gemini, Atlantic, and New York Marine policies to apportion shares within policy limits and determine which policies provide excess coverage. We disagree.
As the district court acknowledged, the proper inquiry is which insurer provides coverage for the contractual obligations Valerus assumed in the MCSA. Under the particular facts of this case, the Gemini, Atlantic, and New York Marine policies do not provide coverage to Valerus, such that it is unnecessary to rank these policies. Dustin Rogers, a Valerus employee, filed suit against Integrated and Coastal Marine. Valerus obligated itself in the MCSA to defend and indemnify Integrated and Coastal Marine, regardless of fault, against claims by Valerus employees, including Dustin Rogers, and to secure insurance in the amounts required by the MCSA. Valerus then procured primary and excess insurance policies from Zurich and AGLIC, respectively, which named Integrated as an additional insured, and which covered contractual liability over written contracts, namely, "insured contracts" including the MCSA. We find no evidence in the record that any other insurance policy provides coverage for Valerus' contractual obligation to defend and indemnify Integrated and Coastal Marine. Accordingly, there is no need to rank insurance policies. This assignment, thus, lacks merit. As such, we find no error in the district court's December 19, 2017 judgment. Zurich and AGLIC are liable for coverage to Valerus for defense and to indemnify Integrated and Coastal Marine for this claim and the settlement with plaintiffs.
We next turn to Zurich's and AGLIC's first and second assignments of error which deal with the unusual procedural posture of the case.
In the district court's June 16, 2017 judgment, which implicates Zurich's and AGLIC's second assignment of error, the *895 district court denied Zurich's peremptory exceptions of no cause of action and no right of action, rejecting Zurich's claim that Coastal Marine was not entitled to maintain a direct action against Zurich.
"Whether a plaintiff has a cause of action and whether a plaintiff has a right of action are questions of law." Hershberger v. LKM Chinese, L.L.C. , 2014-1079, p. 2 (La. App. 4 Cir. 5/20/15), 172 So.3d 140, 143. This Court must, therefore, conduct a de novo review in determining whether the district court's rulings on the exceptions of no cause of action and no right of action were legally correct or incorrect. Id.
As this Court has explained:
The exceptions of no cause of action and no right of action are both peremptory exceptions, the function of which is "to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." "[O]ne of the primary differences between the exceptions of no right of action and no cause of action lies in the fact that the focus in the exception of no right of action is on whether the particular plaintiff has a right to bring the suit, while the focus in an exception of no cause of action is on whether the law provides a remedy against the particular defendant."
The function of an exception of no right of action is to determine whether a plaintiff is included in the class of persons to whom the law has granted the cause of action that is asserted in the plaintiff's petition. An exception of no cause of action "questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition."
In considering the merits of an exception of no cause of action, the trial court is required to decide whether to grant or deny the exception on the basis of the face of the petition. "Each well-founded fact in the petition must be accepted as true." In the case of an exception of no right of action, evidence is admissible at a hearing on the exception to either support or rebut the exception.
Whether a litigant has standing to assert a claim is tested via an exception of no right of action. The foundation of Louisiana's standing requirement is found in Louisiana Code of Civil Procedure Article 681, which provides that "[e]xcept as otherwise provided by law, an action can only be brought by a person having a real and actual interest in what he asserts."
Id. , 2014-1079, pp. 3-4, 172 So.3d at 143 (internal citations omitted). Where doubt exists regarding the appropriateness of an exception of no right of action, it is to be resolved in favor of denying the exception and finding a right of action. See Rebel Distributors Corp. v. LUBA Workers' Comp. , 2013-0749, p. 10 (La. 10/15/13), 144 So.3d 825, 833.
Coastal Marine filed a cross claim seeking defense and indemnification from Zurich pursuant to the MCSA. Coastal Marine alleges that it was Integrated's subcontractor and a member of the MCSA Customer "Group" entitled to defense and indemnification for tort liability for the injuries allegedly sustained by Rogers.[9]
Zurich contends that Coastal Marine's claim against Zurich is barred by the *896 LDAS, pursuant to La. R.S. 22:1269.[10] Zurich argues that it is the insurer for a third party, Valerus; thus, according to Zurich, Coastal Marine cannot maintain a direct action in contract against Zurich, where Coastal Marine has not made a claim against Zurich's insured, Valerus. Thus, Zurich contends that Coastal Marine's claim is contractual.
In support of their arguments, Zurich and AGLIC rely on Tyler v. Walt , 184 La. 659, 167 So. 182 (1936) and Pennsylvania Fire Ins. Co. v. Underwriters at Lloyd's London , 140 So.2d 212 (La. App. 4th Cir. 1962), for the proposition that an unintended third party beneficiary to an insurance policy is not among the class of persons who may sue the insurer directly under the LDAS. Zurich and AGLIC also cite to N. Am. Specialty Ins. Co. v. Georgia Gulf Corp. , 99 F.Supp.2d 726 (M.D. La. 2000) to suggest that "the 'injured party' accorded a right of direct action is a "person injured as a result of tortious conduct and not one injured as a result of breach of contract." We find these cases distinguishable because Coastal Marine is not an unintended beneficiary of the Zurich policy.
Louisiana law permits a party to bring a claim under an insurance policy when he is a named insured, additional insured, or a third party beneficiary of the contract. Ledet v. FabianMartins Constr., L.L.C. , 2018-133, p. 9 (La. App. 5 Cir. 10/17/18), 258 So.3d 1058, 1066 (citing Haddad v. Elkhateeb , 2010-0214, 2010-0308 (La. App. 4 Cir. 8/11/10), 46 So.3d 244, 257 n. 11 ). If a party is neither a named insured nor an additional insured, he can nonetheless avail himself of the benefits of the policy if he can establish that he is a third party beneficiary. Ledet , 2018-133, p. 9, 258 So.3d at 1066 (citing Joseph v. Hospital Service District No. 2 of the Parish of St. Mary , 2005-2364, pp. 6-7 (La. 10/15/06), 939 So.2d 1206, 1211. Louisiana Civil Code article 1978 provides that a "contracting party may stipulate a benefit for a third person called a third party beneficiary." In Louisiana, such a contract for the benefit of a third party is commonly *897 referred to as a stipulation pour autrui . Joseph , 2005-2364, p. 7, 939 So.2d at 1211. There are three criteria for determining whether contracting parties have provided a benefit for a third party: "(1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee." Id. , pp. 8-9, 939 So.2d at 1212.
Coastal Marine alleges in its cross claim that it is a member of Integrated's subcontractor "Group," and that members of the "Group" are those "required by written contract" to be covered by the insurance policies provided for in the MCSA. Coastal Marine alleges that the MCSA obligation to defend and indemnify encompasses Integrated, as well as Coastal Marine. In opposition to these exceptions, Coastal Marine introduced the Zurich policy, which provides coverage for an "insured contract." Here, the insured contract is the MCSA, which sets forth Valerus' obligation to provide defense and indemnification to subcontractors of Integrated.
Considering the indemnification language in the MCSA, together with Zurich's coverage of insured contracts, the district court found, and we agree, that under Valerus' policy with Zurich, Coastal Marine is a third party beneficiary of the Zurich policy as Integrated's subcontractor. Coastal Marine is not an unintended beneficiary of the Zurich policy. Rather, the MCSA contemplates that Coastal Marine is intended to be covered for its defense and indemnification. Though Coastal Marine is not specifically named as an insured in the Zurich policy, it would be entitled to sue Zurich. See Mabile v. Dow Chem. Co. , 2016-0577, p. 7 (La. App. 1 Cir. 12/22/16), 2016 WL 7436587 (reversing grant of exception of no right of action and finding allegations in petition sufficiently pled third party beneficiary status relative to contract of insurance); see also Cashman Equip. Corp. v. Rozel Operating Co. , 854 F.Supp.2d 406, 414 (M.D. La. 2012) (denying motion to dismiss claims for defense and indemnity based on status as a contractual indemnitee, considering Louisiana and Texas law). We, thus, find no error in the district court's overruling of the exceptions of no cause of action and no right of action.
Lastly, we address Zurich's and AGLIC's argument that the district court erred in adjudicating the defense and indemnity obligations of Valerus and coverage obligations under the Zurich and AGLIC policies, in the face of a binding arbitration clause contained in the MCSA. Integrated, New York Marine, and Gemini each point out that Zurich and AGLIC never raised the arbitration issue in the district court, and therefore, it is waived. We agree. Without addressing whether Zurich and AGLIC were entitled to invoke arbitration or had a contractual right to arbitrate with the remaining parties, their arbitration arguments were clearly waived by their actions and inactions in this litigation.
Courts will find that arbitration has been waived "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." Lorusso v. Landrieu Enterprises, Inc. , 2002-2346, p. 6 (La. App. 4 Cir. 5/21/03), 848 So.2d 656, 659. "Seeking relief from the court before demanding arbitration is not determinative of whether the right to demand arbitration has been waived, but is only a factor to be considered." Id. (quotation omitted). Nevertheless, this Court has stated that "one who claims entitlement to arbitration cannot make a pro forma request for it, file a reconventional demand and then sit on his rights for six and a half years, participate *898 in litigation and then after an adverse ruling cry '[ ] the judgment is invalid for want of arbitration.' That is the very antithesis of what arbitration is all about." Thomas v. Desire Cmty. Hous. Corp. , 98-2097, p. 7 (La. App. 4 Cir. 7/19/00), 773 So.2d 755, 759 (recognizing that "arbitration is a substitute for litigation and that its purpose is to settle disputes in a fast, inexpensive manner before a tribunal chosen by the parties" and finding that the right to arbitration was waived by failing to seek timely supervisory review of a judgment granting the exception of prematurity).
"The determination of whether or not a party has waived its contractual right to arbitrate by its participation in the judicial process or by failing to timely request arbitration while participating in the judicial process is an issue properly considered by the [district] court." Rathborne v. Rathborne , 2006-1518, p. 8 (La. App. 4 Cir. 12/3/08), 999 So.2d 816, 822.
Zurich and AGLIC, however, did not argue in the district court that they are entitled to arbitration or that the district court did not have authority to render determinations as to the defense and indemnification obligations of Valerus. Zurich and AGLIC bring their arbitration arguments for the first time on appeal. Having failed to invoke their arbitration argument prior to this appeal, these parties have consented to the procedural posture herein. Zurich and AGLIC have waived their right to arbitration and any argument relating to arbitration.
"Under Rule 1-3 of the Uniform Rules, Courts of Appeal, we cannot consider an argument not raised in the trial court 'unless the interest of justice clearly requires otherwise.' We find that the issue is not properly before this Court nor would the interests of justice be served by our consideration of this argument for the first time on appeal." KeyClick Outsourcing, Inc. v. Ochsner Health Plan, Inc. , 2011-0598, p. 6 (La. App. 4 Cir. 3/14/12), 89 So.3d 1207, 1211. We, thus, find this assignment without merit.
Accordingly, for the reasons ascribed above, we affirm the three judgments on appeal, dated December 7, 2016, June 16, 2017, and December 19, 2017.
AFFIRMED

In a "knock for knock" indemnification agreement, "each party to the contract would indemnify the other for claims brought by its employees or the employees of subcontractors it hired." See, e.g., Weathersby v. Conoco Oil Co. , 752 F.2d 953, 957 (5th Cir. 1984) ; see also Darty v. Transocean Offshore U.S.A., Inc. , 2003-1669, p. 6 (La. App. 4 Cir. 5/12/04), 875 So.2d 106, 110 (quoting Cormier v. Rowan Drilling Co. , 549 F.2d 963, 969-70 (5th Cir. 1977) )(the "whole purpose behind these provisions is to make sure that the contractor ... and the company ... are each solely responsible for anything that happens to their own respective employees, regardless of fault").

In addition, this judgment denied Coastal Marine's motion for summary judgment seeking a finding of freedom from fault.

No written settlement agreement is contained in the record before us. The parties submit that the settlement was read into the record on January 9, 2017. That transcript is not a part of the record. Nevertheless, we find no reason to believe a genuine issue of material fact exists as to the terms of the settlement.

Coastal Marine's motion for summary judgment seeking determination of actual defense costs and attorneys' fees, however, was denied as premature.

The district court's findings concerning LOAIA are contained in its reasons for judgment dated December 7, 2016, and December 19, 2017, not in the judgments themselves. "[A]n appeal lies only from the judgment, not from the reasons." I.F. v. Administrators of Tulane Educ. Fund , 2013-0696, p. 6 (La. App. 4 Cir. 12/23/13), 131 So.3d 491, 496. We thus review this assignment to determine whether LOAIA renders the defense and indemnification provision and additional insured endorsements unenforceable and whether such a finding could mandate reversal of summary judgment against Zurich and AGLIC.

While LOAIA is a Louisiana state statute, most of the jurisprudence analyzing whether a contract "pertains to a well" has come from the federal courts. As this Court explained in Rousse v. United Tugs, Inc. , 2017-0585, p. 6 (La. App. 4 Cir. 12/20/17), 234 So.3d 1179, 1184 :
"Federal appellate court decisions are persuasive only." Shell Oil Co. v. Sec'y, Revenue & Taxation , 96-0929, p. 9, n. 11 (La. 11/25/96), 683 So.2d 1204, 1210 (citations omitted). "Federal appellate decisions will not be followed in the face of positive jurisprudence of the Supreme Court of Louisiana to the contrary." Id. , 96-0929 at p. 9, 683 So.2d at 1210. Nonetheless, as federal appellate decisions are persuasive authority, "we review those opinions carefully to see if they provide further guidance for our analysis." FIA Card Servs., N.A. v. Weaver , 2010-1372, p. 7 (La. 3/15/11), 62 So.3d 709, 714. Likewise, federal district court decisions are not binding on this Court, but we may find their "rationale persuasive and concur with [their] conclusions." Houston v. Avondale Shipyards, Inc. , 506 So.2d 149, 150 (La. App. 4th Cir. 1987).

Those factors are:
(1) whether the structures or facilities to which the contract applies or with which it is associated, e.g., production platforms, pipelines, junction platforms, etc., are part of an in-field gas gathering system;
(2) what is the geographical location of the facility or system relative to the well or wells;
(3) whether the structure in question is a pipeline or is closely involved with a pipeline;
(4) if so, whether that line picks up gas from a single well or a single production platform or instead carries commingled gas originating from different wells or production facilities;
(5) whether the pipeline is a main transmission or trunk line;
(6) what is the location of the facility or structure relative to compressors, regulating stations, processing facilities or the like;
(7) what is the purpose or function of the facility in question;
(8) what if any facilities or processes intervene between the wellhead and the structure or facility in question, e.g., "heater treaters," compressor facilities, separators, gauging installations, treatment plants, etc.;
(9) who owns and operates the facility or structure in question, and who owns and operates the well or wells that produce the gas in question;
(10) and any number of other details affecting the functional and geographic nexus between "a well" and the structure or facility that is the object of the agreement under scrutiny.

See, e.g., Penton v. Hotho, 601 So.2d 762, 766 (La. App. 1st Cir.1992) (citing Graves v. Traders & General Insurance Company , 252 La. 709, 214 So.2d 116, 118 (1968) ; Dean v. State Farm Mut. Auto Ins. Co. , 518 So.2d 1115, 1118 (La. App. 4th Cir. 1987) ).

The parties do not dispute that the MCSA did not require Valerus to name Coastal Marine an additional insured under the Zurich and AGLIC policies. There is also no evidence of a contract between Coastal Marine and Valerus or between Coastal Marine and Zurich.

The Louisiana Direct Action Statute, found in La. R.S. 22:1269, provides, in relevant part:
B. (1) The injured person or his survivors or heirs mentioned in Subsection A of this Section, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only; however, such action may be brought against the insurer alone only when at least one of the following applies:
(a) The insured has been adjudged bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured bankrupt have been commenced before a court of competent jurisdiction.
(b) The insured is insolvent.
(c) Service of citation or other process cannot be made on the insured.
(d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons.
(e) When the insurer is an uninsured motorist carrier.
(f) The insured is deceased.
(2) This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if such provisions are not in violation of the laws of this state.